# STATE OF CONNECTICUT *v.* RICHARD BRUNDAGE
## (AC 32041)

Lavine, Robinson and Flynn, Js.

Argued April 12—officially released September 11, 2012

*Raymond L. Durelli,* for the appellant (defendant).

*Kathryn W. Bare,* assistant state's attorney, with whom, on the brief, were *Leonard C. Boyle,* deputy chief state's attorney, *Maureen Platt,* state's attorney, and *Cynthia S. Serafini,* senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Richard Brundage, appeals from the judgments of conviction, rendered following a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal, the defendant claims that the trial court improperly (1) denied his motions to dismiss the sexual assault charges against him that were time barred by General Statutes (Rev. to 1993) § 54-193a and (2) permitted the state's expert witness to give an opinion in

[1] The defendant was charged in two separate informations, which were consolidated for trial, with one count each of sexual assault in the first degree and risk of injury to a child.

response to a hypothetical question. We agree that the court improperly concluded that General Statutes § 54-193a, as amended by Public Acts 2002, No. 02-138, § 1, effective May 23, 2002, applied to offenses that occurred prior to May 23, 2002, and, therefore, reverse the judgments of conviction.

The jury reasonably could have found the following facts. In January, 1995, the defendant, the boyfriend of the victim's[2] mother, moved into the family home with the victim and her mother in Wolcott. At that time, the victim was eight years old and in third grade.[3] Around this time, the defendant began sexually abusing the victim in the family home when the victim's mother was at work or had gone to bed.

The abuse began with the defendant fondling the victim's breasts and vagina and digitally penetrating the victim's vagina. When the victim was ten years old and in sixth grade, the defendant began having forced penile-vaginal intercourse with her. Initially, the defendant abused the victim approximately twice each month, but as she became older, the abuse increased to approximately once each week.[4] The victim did not report the abuse because she was afraid of the defendant and he threatened to leave her mother if she told her about the abuse.[5] The abuse continued until approximately March, 2003, when the victim's mother discovered that the defendant was having an affair with another woman and the defendant moved out.

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] The victim was born on October 19, 1986.

[4] In addition to the abuse at the family home in Wolcott, the defendant abused the victim at a parking lot in Waterbury, the family home in Terryville, the family home in Prospect, the home of the defendant's parents in Vermont, a campground in Rhode Island and a hotel in New York.

[5] The victim testified that she did not want to hurt her mother because her mother had "just finished with her cancer treatment."

On July 31, 2007, after reading a newspaper article discussing the deportation of the defendant's wife,[6] the victim reported the sexual abuse to the Waterbury police. On October 20, 2007, the victim reported the sexual abuse to the Wolcott police. On November 13, 2007, the Waterbury police obtained a warrant for the defendant's arrest. On November 26, 2007, the Wolcott police obtained a warrant for the defendant's arrest. The defendant was charged with one count of sexual assault in the first degree and one count of risk of injury to a child in two separate informations. The victim testified about the abuse at trial, explaining that the defendant fondled and digitally penetrated her on more than 100 occasions and that the defendant had penile-vaginal intercourse with her on more than 100 occasions. The victim also testified as to five specific incidents of sexual abuse that occurred between 1995 and 2003. On November 10, 2009, the jury found the defendant guilty on all counts in both informations. On January 29, 2010, the court sentenced the defendant to a total effective term of thirty years imprisonment, execution suspended after twenty years, and twenty years probation. Additional facts will be set forth as necessary.

I

The defendant claims that the court abused its discretion in denying his motions to dismiss the charges as untimely. The state agrees, and so do we.

Prior to May 23, 2002, the statute of limitations for child sexual abuse cases, General Statutes (Rev. to

---

[6] The victim testified that the article indicated that the defendant's wife was approximately the same age as she was and that the defendant was distraught after his wife was deported. The victim reported the abuse after reading the article because she wondered whether the defendant's wife also had been abused by the defendant when she was younger, and the victim did not "want anyone to feel sorry for [the defendant] because of what he had done to [the victim]."

1993) § 54-193a, provided: "Notwithstanding the provisions of section 54-193, no person may be prosecuted for any offense involving sexual abuse, sexual exploitation or sexual assault of a minor except within two years from the date the victim attains the age of majority or within five years from the date the victim notifies any police officer or state's attorney acting in his official capacity of the commission of the offense, whichever is earlier, provided in no event shall such period of time be less than five years after the commission of the offense."

On May 23, 2002, the legislature passed Public Acts 2002, No. 02-138, § 1, which amended § 54-193a by extending the limitation period. The current version of § 54-193a provides: "Notwithstanding the provisions of section 54-193, no person may be prosecuted for any offense, except a class A felony, involving sexual abuse, sexual exploitation or sexual assault of a minor except within thirty years from the date the victim attains the age of majority or within five years from the date the victim notifies any police officer or state's attorney acting in such police officer's or state's attorney's official capacity of the commission of the offense, whichever is earlier, provided if the prosecution is for a violation of subdivision (1) of subsection (a) of section 53a-71, the victim notified such police officer or state's attorney not later than five years after the commission of the offense."

On appeal, both the defendant and the state agree that the court misconstrued the current version of § 54-193a and improperly concluded that it applied retroactively. The parties agree that General Statutes (Rev. to 1993) § 54-193a applied to alleged incidents that occurred prior to May 23, 2002, and, accordingly, that those alleged offenses are time barred. Thus, the only alleged offenses that are not time barred are those that

occurred after May 22, 2002, because the current version of § 54-193a, which provides an extended limitation period, applies to those offenses. The defendant and the state disagree, however, as to the appropriate remand in these cases. The defendant urges us to set aside the judgments of conviction and direct the trial court to dismiss the charges. The state argues that we should remand the cases for a new trial, providing the state with the opportunity to amend the informations to allege only offenses that occurred after May 22, 2002. We conclude that the cases should be remanded for a new trial.

The following additional facts and procedural history are relevant to this claim. On September 22, 2009, the state filed two substitute long form informations charging the defendant in connection with incidents that occurred in Wolcott and Waterbury, respectively. In the Wolcott information, count one alleged sexual assault in the first degree that occurred between October 19, 1994, and October 19, 1999; count two alleged sexual assault in the second degree that occurred between October 19, 1999, and October 19, 2002; count three alleged risk of injury to a child that occurred between October 19, 1994, and October 19, 2002; and count four also alleged risk of injury to a child that occurred between October 19, 1994, and October 19, 2002. In the Waterbury information, count one alleged sexual assault in the first degree that occurred between September 1, 2000, and October 19, 2002; count two alleged sexual assault in the second degree that occurred between September 1, 2000, and October 19, 2002; count three alleged risk of injury to a child that occurred between September 1, 2000, and October 19, 2002; and count four also alleged risk of injury to a child that occurred between September 1, 2000, and October 19, 2002.

On October 26, 2009, the defendant filed motions to dismiss the charges in each of the informations, asserting that prosecution of the offenses was time barred under General Statutes (Rev. to 1993) § 54-193a. On October 29, 2009, the state objected to each of the motions to dismiss, arguing that the current version of § 54a-193a applies retroactively, and filed substitute informations that realleged the first three counts in each of the informations but not count four.

On November 2, 2009, the court held a hearing on the defendant's motions to dismiss. At the hearing, the state argued that, pursuant to *State* v. *Skakel*, 276 Conn. 633, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006), the current version of § 54a-193a applied to conduct that occurred prior to its amendment because criminal statutes of limitations · are presumptively retroactive and the limitation period set forth under General Statutes (Rev. to 1993) § 54-193a had not yet expired at the time of the amendment. The defendant countered that our Supreme Court in *Skakel* stated that criminal statutes of limitations are not retroactive when there is a clear indication that the legislature intended the particular statute to apply prospectively only. The defendant maintained that the legislature clearly intended the current version of § 54a-193a to apply prospectively only, as demonstrated by the notes accompanying the statute and the legislative history. The defendant acknowledged, however, that any offenses that occurred after May 22, 2002 were not time barred. The defendant then represented that, if the court accepted his analysis, the state would have the option to file substitute informations reflecting acts that occurred after May 22, 2002. The court denied the defendant's motions to dismiss, concluding that the current version of § 54a-193a applied retroactively.

On November 6, 2009, the state filed two substitute informations that did not include the sexual assault in

the second degree counts and modified the dates of the risk of injury to a child counts by one day. Accordingly, the operative informations alleged the following. In the Wolcott information, count one alleged sexual assault in the first degree that occurred between October 19, 1994, and October 19, 1999, and count two alleged risk of injury to a child that occurred between October 19, 1994, and October 18, 2002. In the Waterbury information, count one alleged sexual assault in the first degree that occurred between September 1, 2000, and October 18, 2002, and count two alleged risk of injury to a child that occurred between September 1, 2000, and October 18, 2002.

Preliminarily, we set forth the standard of review. "Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Woodtke*, 130 Conn. App. 734, 738, 25 A.3d 699 (2011); see also *State* v. *Parra*, 251 Conn. 617, 622, 741 A.2d 902 (1999) (whether statute of limitations applies retroactively is question of law subject to plenary review).

We agree with the parties that, contrary to the trial court's conclusion, § 54-193a, as amended on May 23, 2002, does not apply retroactively and that any offenses that occurred prior to May 23, 2002, are time barred pursuant to General Statutes (Rev. to 1993) § 54-193a. In *State* v. *Skakel*, supra, 276 Conn. 693, our Supreme Court overruled *State* v. *Paradise*, 189 Conn. 346, 456 A.2d 305 (1983), and held that amendments to criminal statutes of limitations are presumptively retroactive,

subject to ex post facto limitations.[7] The court specifi-
cally stated, however, that criminal statutes of limita-
tions do not apply retroactively when the legislature
has clearly expressed its intent that the statute apply
prospectively only. *State* v. *Skakel*, supra, 679–80,
686–87.

When the legislature amended § 54-193a on May 23,
2002, and extended the limitation period, it clearly
intended the amendment to apply prospectively only,
that is, to offenses that occurred after the date of the
amendment. Public Acts 2002, No. 02-138, § 1, which
amended § 54-193a, states that the amendment was
"[e]ffective from passage, *and applicable to any offense
committed on or after said date.*" (Emphasis added.)
That act was passed on May 23, 2002. Therefore, the
current version of § 54-193a applies only to offenses
committed on or after May 23, 2002. See *State* v. *George
J.*, 280 Conn. 551, 561 n.6, 910 A.2d 931, (2006) ("the
2002 amendment would not be applied retroactively
under the rule . . . set forth in . . . *Skakel* . . .
given that the 2002 Public Act prescribed that the
amendment was 'applicable to any offense committed
on or after said date' "), cert. denied, 549 U.S. 1326, 127
S. Ct. 1919, 167 L. Ed. 2d 573 (2007).[8] Offenses that
occurred prior to the 2002 amendment, thus, are gov-
erned by the previous version of the statute.

Accordingly, prosecution of offenses that occurred
prior to May 23, 2002, is barred by the statute of limita-
tions. Under General Statutes (Rev. to 1993) § 54-193a,

---

[7] The court explained that the ex post facto clause of the United States
constitution only bars retroactive application of a criminal statute of limita-
tions if the limitation period that was in effect prior to the amendment
already had expired, and, thus, the prosecution was time barred as of the
date of the amendment. *State* v. *Skakel*, supra, 276 Conn. 681.

[8] As the parties point out, the legislative history of Public Acts 2002, No.
02-138, § 1, also demonstrates that the legislature intended § 54-193a to apply
prospectively only. See e.g., 45 H.R. Proc., Pt. 13, 2002 Sess., p. 3950.

the defendant may not be prosecuted "except within two years from the date the victim attains the age of majority or within five years from the date the victim notifies any police officer or state's attorney acting in his official capacity of the commission of the offense, whichever is earlier, provided in no event shall such period of time be less than five years after the commission of the offense." Two years from the date the victim attained the age of majority is October 19, 2006. See footnote 3 of this opinion. The victim first notified the police on July 31, 2007, and five years from that date is July 31, 2012. October 19, 2006 is the earlier of the two dates and, thus, normally would be the operative date. Under the proviso, however, the defendant may be prosecuted within five years from the commission of the offense. The latest date alleged in the informations is October 18, 2002, and five years from that date is October 18, 2007. The prosecutions began when the warrants were issued[9] on November 13, 2007, and November 26, 2007, after the limitation period under General Statutes (Rev. to 1993) § 54-193a had expired.

Prosecution of offenses that occurred on May 23, 2002 or thereafter, however, is not barred by the statute of limitations. Under the current version of § 54-193a, the defendant may not be prosecuted "except within thirty years from the date the victim attains the age of majority or within five years from the date the victim notifies any police officer or state's attorney acting in such police officer's or state's attorney's official capacity of the commission of the offense, whichever is earlier . . . ." The earlier of the two dates under this scenario is July 31, 2012, five years from the date the victim first notified the police. Accordingly, under the current version of § 54-193a, prosecution is not time barred for alleged offenses that occurred on or after May 23, 2002.

---

[9] See State v. Kruelski, 41 Conn. App. 476, 487, 677 A.2d 951, cert. denied, 238 Conn. 903, 677 A.2d 1376 (1996).

Of the four counts in the operative informations, only count one of the Wolcott information alleged a time period that is completely time barred.[10] By alleging time periods up to October 18, 2002, the other three counts are partially untimely and partially timely. Because the trial court erroneously concluded that the current version of § 54-193a applied retroactively, it foreclosed the defendant from offering proof regarding the dates of the offenses in support of an affirmative statute of limitations defense. Such a defense simply no longer was viable in light of the court's ruling.[11] Therefore, the court erred in denying the motions to dismiss.

Although the defendant acknowledges on appeal that prosecution of offenses that occurred after May 22, 2002, is not time barred, he argues that we should set aside the judgments of conviction and direct the trial court to dismiss the partially untimely charges, rather than remand the cases for a new trial.[12] He fails, however, to provide any legal support for this request. Retrial here is not barred by the double jeopardy clause of the fifth amendment. See *State* v. *Boyd*, 221 Conn. 685, 691, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 959 (1992). In the absence of any persuasive reason to do otherwise, we conclude that the cases should be remanded for a new trial as to the charges that are not time barred.[13]

---

[10] We therefore conclude that count one of the Wolcott information should be dismissed.

[11] The present cases are therefore distinguishable from *State* v. *Parsons*, 28 Conn. App. 91, 95–97, 612 A.2d 73, cert. denied, 223 Conn. 920, 614 A.2d 829 (1992), where this court held that the trial court did not improperly deny the motion to dismiss because the defendant had the burden to prove at trial that the offense was untimely. Unlike in these cases, the trial court in *Parsons* did not reach an erroneous legal conclusion by applying the wrong statute of limitations. Rather, the motion to dismiss raised a question of fact that had to be proved at trial.

[12] At oral argument before this court, the defendant conceded that the state would not be barred on double jeopardy grounds from retrying the defendant after dismissal.

[13] The defendant also conceded at trial that the state would have the opportunity to amend the informations if the court accepted his argument

## II

The defendant next claims that the court improperly permitted the state's expert witness to give an opinion in response to a hypothetical question regarding the behavior of a child who has been sexually abused.[14] We conclude that the court did not abuse its discretion in permitting the expert to respond to the hypothetical question.

The following additional facts and procedural history are relevant to this claim. At trial, the state called Diane Edell to testify as an expert on child sexual abuse.[15] Edell testified that she is a licensed social worker who conducts forensic interviews of children who allegedly have been sexually abused for the Center for Youth and Families at Charlotte Hungerford Hospital. Edell testified that she had not interviewed the victim or reviewed any materials pertaining to the cases. Edell then explained some of the general behavioral patterns of children who have been sexually abused, including delayed disclosure and difficulty distinguishing between individual episodes of abuse.

The state indicated that it was going to provide a set of hypothetical facts to Edell, at which point defense counsel requested an offer of proof outside the presence of the jury. After the jury was excused, the state explained that it intended to provide Edell with a series of facts based on the evidence and ask which facts are

_____

that the current version of § 54-193a is not retroactive. Because the trial court applied the current version of § 54-193a retroactively, there was no need for the state to amend the informations to allege only acts that occurred after May 22, 2002.

[14] We address this claim, even though we have concluded that the cases must be remanded for a new trial, because the issue is likely to recur on retrial. See *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 259–60, 9 A.3d 364 (2010).

[15] The defendant did not object to Edell's testifying as an expert on child sexual abuse.

important to her as an expert and whether the facts are consistent with a child who has been sexually abused. The state proffered the specific hypothetical and follow-up questions it intended to ask. The defendant objected on the ground that the facts of the hypothetical were too close to the facts of the cases and that the state intended to elicit improper testimony as to an ultimate issue, the victim's credibility. After extensive argument, the court ruled that the state could not ask Edell whether the behavior of the child in the hypothetical was consistent with someone who has been sexually abused, but the court permitted the state to ask about delayed disclosure. The court also stated that it would provide a limiting instruction after the response to the hypothetical.

When the jury returned, the state asked Edell to assume the following facts: "You have a twenty year old female whose parents divorced when she was four years old. At age eight, her mother's boyfriend moved into the home. That the mother is a single parent. At age nine, the mom is diagnosed with cancer, underwent intensive chemo and radiation therapy. During that time period, the mother's boyfriend became very attentive to the girl during the illness and assumed the role of the father figure with the girl. That at age eight, the boyfriend had begun fondling the child by putting his fingers in her vagina. That that occurred on more than 100 occasions from the time the child was eight to eleven. That the mother's boyfriend told the child not to tell the mother or he would break up with the mother, so the child did not tell because she was afraid that the mother would be upset or that she would be hurt while she was sick. That at age eleven, the intercourse became penile-vaginal intercourse and that the child was forced to participate in that, that she would struggle and then give up during the intercourse. That the sexual intercourse occurred almost weekly from age eleven to sixteen. That it continued, that type of penile-vaginal

intercourse, until age sixteen when the mother ended the relationship with the boyfriend. That the relationship that the child had with the boyfriend during that eight year period was an up and down relationship, at one point a father-daughter type of relationship, and at other points more of a boyfriend-girlfriend relationship, and that the girl disclosed the sexual abuse at age twenty after she saw an article about the boyfriend in a paper."

The assistant state's attorney examined Edell as follows:

"Q. Do you have an opinion as to whether the child's behavior in the hypothetical is consistent with that of other sexual assault victims that you have interviewed with respect to the timing of a disclosure?

"A. It is consistent, yes.

\* \* \*

"Q. What other facts in the hypothetical are important to you with respect to the timing of when that child disclosed, that the child waited four years after the boyfriend was out of the house to disclose?

"A. Well, starting, I think, probably most of the factors I've already touched on. One is that it was somebody who had a lot of access, and assuming that to be true, that it was chronic. That it—starting at age eight, what we see at that age is kids, you know, they maybe think something is going on that shouldn't be going on, but they're not really clear what that is, what to do about it. It takes a while until they come into full realization that something just needs to stop or that this is really something that's not good. By that time often it's escalated into something else.

"One of the other elements is the mother getting ill means—it just means that the child is more dependent

on this other person not knowing what's going to happen with the mother. I would, you know, again, in terms of my experience with kids, some of the examples, not wanting to tell the mom because mom is sick and how could she possibly, you know, lay that further onto the mom. . . .

"Q. And is there anything—with respect to the facts that I gave you in the hypothetical, is there any significance to the delayed disclosure while the child was still living with the abuser?

"A. Yes. It's not unusual for the disclosure when it's purposeful to come at a point when the person, the child, is feeling safe, or, you know, something like the child kind of—when the abuse stops the child kind of puts it out of their mind, and then they might see somebody passing in the street or something like that and remind them. There might be a lot of different factors that play into the decision to tell, but it's not unusual to wait until the abuse is over and there's some separation from the abuser."

The court then provided the following limiting instruction to the jury: "Just now the state elicited an opinion concerning delayed reporting. In doing so there were certain facts that were assumed. However, for purposes of the opinion the witness was asked to assume certain things were fact. However, it is always the jury's duty to determine what the facts are. And so that was for purposes of the hypothetical, but you determine what facts you find, and you determine whether the state proved those facts beyond a reasonable doubt."

On appeal, the defendant's principal argument is that the hypothetical question elicited expert testimony that "inappropriately served to validate the truthfulness of [the victim's] testimony because the hypothetical was

nothing more than a synopsis of the [the victim's] testimony."[16] The state argues that the hypothetical conformed to the rules of evidence, that "Edell's testimony was proper expert witness testimony on the reactions and behaviors of victims of sexual abuse," and that Edell did not offer an opinion as to the credibility of the victim. We agree with the state.

Our review of the admissibility of a hypothetical question is governed by the abuse of discretion standard. *Smith* v. *Andrews*, 289 Conn. 61, 74–75, 959 A.2d 597 (2008). Section 7-4 (c) of the Connecticut Code of Evidence provides: "An expert may give an opinion in response to a hypothetical question provided that the hypothetical question (1) presents the facts in such a manner that they bear a true and fair relationship to each other and to the evidence in the case, (2) is not worded so as to mislead or confuse the jury, and (3) is not so lacking in essential facts as to be without value in the decision of the case. A hypothetical need not contain all of the facts in evidence."

"[E]xpert testimony of reactions and behaviors common to victims of sexual abuse is admissible. . . . Such

---

[16] The defendant also argues that the hypothetical contained insufficient facts relating to the behavior of children who have been sexually abused. Because the defendant did not raise this evidentiary objection at trial, however, we do not address it. "Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection [to the trial court]. . . . [T]o afford petitioners on appeal an opportunity to raise different theories of objection would amount to ambush of the trial court because, [h]ad specific objections been made a trial, the court would have had the opportunity to alter [the charge] or otherwise respond." (Citation omitted; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 133–34, 998 A.2d 730 (2010).

Additionally, the defendant argues that the hypothetical improperly contained extraneous facts not related to the expert's opinion and failed to specify which facts were important to what behavior. We find no merit in this argument. There is no requirement that the hypothetical contain only those facts directly related to the expert's opinion or that the expert identify each fact set forth in the hypothetical in responding to the state's questions. Moreover, we conclude that the hypothetical was "not worded so as to mislead or confuse the jury." See Connecticut Code of Evidence § 7-4 (c) (2).

evidence assists a jury in its determination of the victim's credibility by explaining the typical consequences of the trauma of sexual abuse on a child. . . . It is not permissible, however, for an expert to testify as to his opinion of whether a victim in a particular case is credible or whether a particular victim's claims are truthful. . . . In this regard, [our Supreme Court has] found expert testimony stating that a victim's behavior was generally *consistent with* that of a victim of sexual or physical abuse to be admissible, and [has] distinguished such statements from expert testimony providing an opinion as to whether a particular victim had *in fact* suffered sexual abuse." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Iban C.*, 275 Conn. 624, 635, 881 A.2d 1005 (2005). "Moreover, [our Supreme Court has] noted that even indirect assertions by an expert witness regarding the ultimate issue in a case can serve inappropriately to validate the truthfulness of a victim's testimony." Id.

In this case, the defendant stands on its head the more usual claim that the hypothetical failed to set out adequately the necessary facts and, instead, argues that the hypothetical contained facts that were too similar to the facts of the case. In *State* v. *Crespo*, 114 Conn. App. 346, 368–75, 969 A.2d 231 (2009), aff'd on other grounds, 303 Conn. 589, 35 A.3d 243 (2012), this court rejected a similar claim. On appeal, Crespo, the defendant, argued "that the state's hypothetical questions so closely tracked the facts of [the] case that [the expert's] testimony unfairly bolstered the victim's credibility." Id., 374. This court first explained that "[t]here is a critical distinction between admissible expert testimony on general or typical behavior patterns of . . . victims and inadmissible testimony directly concerning the particular victim's credibility." (Internal quotation marks omitted.) Id. This court concluded that "[t]he fact that the prosecutor asked a number of hypothetical

questions that tracked the facts of this case does not lead us to conclude that [the expert] opined that the victim was credible. That the questions tracked the facts of this case bolstered their relevance, and in each hypothetical question [the expert] was asked merely to compare the hypothetical victim's conduct to that of a typical sexual assault victim. The questions did not call on [the expert] to opine that the victim either was credible or was a victim of any crime. The questions called on [the expert] to evaluate whether the victim's conduct was uncommon or unusual as compared to that of other victims of sexual abuse. [The expert] did not testify that he had treated the victim or had even met the victim. Rather, he testified that his knowledge of the case was limited to the facts contained in the state's hypothetical questions. . . . Additionally, the court instructed the jury that the expert testimony was not binding on the jury but subject to its scrutiny. Accordingly, we are not persuaded that the testimony unfairly bolstered the victim's credibility." Id., 375.

Similarly, we conclude that the hypothetical in this case did not elicit improper testimony as to the victim's credibility. It is true that, in this case, the form of the question posed by the assistant state's attorney—a detailed recitation of facts, followed by questions asking the expert to identify the facts important to the expert's opinion—differs somewhat from *Crespo*, in which the prosecutor asked the expert more specific questions following each hypothetical. See id., 371 n.13. We do not conclude, however, that this modest difference in the form of the questions sufficiently distinguishes this case from *Crespo* to render *Crespo* inapplicable. Accordingly, we conclude that the trial court did not abuse its discretion.

The judgments are reversed and the cases are remanded with direction to dismiss count one of the

Wolcott information and for a new trial as to the remaining charges.

In this opinion the other judges concurred.