******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., dissenting. I cannot square the majority's conclusion that the state was entitled to file a substitute information containing exclusively new charges against the defendant, Richard Brundage, with the focused and definite terms of the Appellate Court's remand order under our established law. Moreover, I am troubled by the institutional implications that await the Judicial Branch if a specific remand order is interpreted so broadly that it allows a party who is disenchanted with the outcome of an appeal to reinvent its case after the conclusion of that appeal. Because I do not agree that an unsuccessful litigant to an appeal should be permitted a judicial mulligan in such circumstances, I respectfully dissent.

I begin by emphasizing the significance of the fact that the Appellate Court's remand order was directed to a specific end. The order instructed the trial court to conduct a "new trial as to the *remaining* charges." (Emphasis added.) *State* v. *Brundage*, 138 Conn. App. 22, 40, 50 A.3d 396 (2012); cf. *Beccia* v. *Waterbury*, 185 Conn. 445, 463, 441 A.2d 131 (1981) ("the case is remanded for further proceedings not inconsistent with this opinion"). As the majority properly recognizes, a trial court must strictly comply with a remand order and cannot consider matters that are extraneous to the issues and purposes of the remand. See *Hurley* v. *Heart Physicians*, *P.C.*, 298 Conn. 371, 384, 3 A.3d 892 (2010), and cases cited therein. Compliance with a remand order "means that the direction is not deviated from. . . . No judgment other than that directed or permitted by the reviewing court may be rendered . . . ." (Internal quotation marks omitted.) Id.

It is manifest that a trial on *new* charges, rather than a new trial on the *remaining* charges, does not satisfy these plain requirements. A trial on new charges undeniably and directly deviates from the remand order. Moreover, a trial on new charges indisputably requires the trial court and the parties to consider extraneous matters not within the purview of the original information because the state must prove the distinct elements of the newly charged crimes, the defendant must assert any applicable defenses to those new charges and the trial court must instruct the jury on those charges and any associated defenses that never were the subject of the original case. Regardless of whether the state proves those elements, the judgment that is rendered will be one that was not permitted by the remand order because it is not a judgment on the remaining charges (which the state here abandoned after remand). As such, allowing the state to file a substitute information impermissibly exceeds the scope of the Appellate Court's limited remand order. See *Fair Haven & Westville Rail-*

*road Co.* v. *New Haven,* 77 Conn. 667, 672–73, 60 A. 651 (1905) (plaintiff not allowed to amend pleading where remand order was specific and new trial was not ordered); *Oldani* v. *Oldani,* 154 Conn. App. 766, 776, 778, 108 A.3d 272 (new claims in amended complaint extraneous to remand for specific purpose), cert. denied, 315 Conn. 930, 110 A.3d 433 (2015); see also *Jackson* v. *Commissioner of Correction,* 227 Conn. 124, 128–29, 629 A.2d 413 (1993) (lower court exceeded scope of limited remand); *Mazzotta* v. *Bornstein,* 105 Conn. 242, 244, 135 A. 38 (1926) (same); *Patron* v. *Konover,* 43 Conn. App. 645, 653, 685 A.2d 1133 (1996) (same), cert. denied, 240 Conn. 911, 690 A.2d 400 (1997); *Grady* v. *Schmitz,* 21 Conn. App. 111, 115, 572 A.2d 71 (same), cert. denied, 215 Conn. 806, 576 A.2d 537 (1990).

The majority's principal reliance on a case that issued an open-ended remand order "for further proceedings not inconsistent with [the court's] opinion"; *Beccia* v. *Waterbury,* supra, 185 Conn. 463; and on the fact that the Appellate Court's opinion was silent about whether a substitute information could be filed is unpersuasive. The Appellate Court did not issue an open-ended remand for a new trial, but instead ordered a new trial on those charges in the original information that remained after that court concluded that the state could not prosecute the defendant on certain charges. Although the Appellate Court's opinion did not address whether a substitute information could be filed, we cannot construe the absence of something as permission for such an action, as such a construction conflicts with the remand. "[W]here the language used in the body of an appellate decision conflicts with the directions given for remand, the directions given for remand control." 5 Am. Jur. 2d 482, Appellate Review § 732 (2007). Nor can we construe such a void as similar to circumstances in which we have allowed a party to pursue a claim or defense based on events that occurred subsequent to the initial proceeding on appeal. See, e.g., *Bauer* v. *Waste Management of Connecticut, Inc.,* 239 Conn. 515, 522, 686 A.2d 481 (1996) (defendant could be allowed to amend answer on remand to raise defense based on events that occurred after trial). The charges advanced in the substitute information in the present case could have been brought at the outset of the defendant's trial.

In addition to violating our remand jurisprudence, I am concerned that the majority's view allows for the reinvention of this case. Like civil pleadings, the purpose of an information "is to frame, present, define, and narrow the issues and to form the foundation of, and to limit, the proof to be submitted" at trial. (Internal quotation marks omitted.) *Perez* v. *Cumba,* 138 Conn. App. 351, 367, 51 A.3d 1156, cert. denied, 307 Conn. 935, 56 A.3d 712 (2012); 71 C.J.S. 33, Pleading § 2 (2011). By permitting the filing of a substitute information containing entirely new charges against the defendant, the

majority allows the state to expand, rather than narrow, the issues as the case has proceeded, thereby undermining the wisdom of our rule that "a case cannot be presented by halves." *Fitch* v. *State*, 139 Conn. 456, 460, 95 A.2d 255 (1953). More importantly, the majority gives the state an unwarranted second bite at the apple. We have stated that parties should never be permitted "to go back [after] all that had been done, and be allowed to change their pleadings and try the case de novo, when they had taken their chance of success in the course they had chosen to pursue, and had lost. Indeed, the door would have been closed to them if the request had been made . . . ." *Crane* v. *Eastern Transportation Line*, 50 Conn. 341, 343 (1882). Accordingly, I cannot agree that it is proper to allow the state to file a substitute information charging the defendant with new offenses after it recognized that it could not obtain a conviction on the crimes on which it chose to originally charge the defendant following the defendant's successful appeal. While I do not suggest that the state should overcharge in anticipation of the possibility of such a failure of proof, I am of the opinion that litigants should frame and present all of the good faith claims or charges that the facts warrant at the outset of a case, in order to conserve the resources of the parties and the judicial system, and to spare all involved the piecemeal presentation of a case.

To be clear, I do not dispute the majority's assertion that the state could have filed a new information or that doing so would have been more disadvantageous to the defendant than allowing the filing of a substitute information. In fact, that is precisely what should have happened under the circumstances of this case. The efficient operation of our judicial system depends on strict compliance with remand orders as issued. I foresee a day, probably in the not too distant future, where this court will be forced to distance itself from today's holding because of the mischief that it will yield in both our criminal and civil courts.

———————————————