******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RICHARD BRUNDAGE
(SC 19308)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Argued October 8, 2015—officially released March 22, 2016*

*Raymond L. Durelli*, assigned counsel, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom were *Cynthia S. Serafini*, senior assistant state's attorney, and, on the brief, *Maureen Platt*, state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. Both issues in this certified appeal center on the claim of the defendant, Richard Brundage, that the state is precluded from filing a substitute information bringing new charges against him following his partially successful appeal challenging his convictions on charges that were determined to be time barred. The defendant appeals from the judgment of the Appellate Court, which concluded that the trial court improperly determined that the state was barred from filing a substitute information on remand because the new charges exceeded the scope of the remand from the Appellate Court.[1] *State* v. *Brundage*, 148 Conn. App. 550, 552, 87 A.3d 582 (2014) (*Brundage II*). The procedural background of this appeal began in *State* v. *Brundage*, 138 Conn. App. 22, 23–24, 50 A.3d 396 (2012) (*Brundage I*), in which the Appellate Court reversed the judgments of conviction of the defendant of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). In resolving the defendant's statute of limitations challenge to his convictions, the court in *Brundage I* concluded in relevant part that "[o]f the four counts in the operative informations, only count one . . . is completely time barred [under General Statutes (Rev. to 1993) § 54-193a]. . . . [T]he other three counts are partially untimely and partially timely." (Footnote omitted.) Id., 32. The court remanded the case to the trial court for a new trial "as to the remaining charges." Id., 40. On remand, the trial court granted the defendant's motion to dismiss the state's November 26, 2012 substitute information charging him with two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (B) (2012 substitute information). The trial court ruled that the scope of the remand order precluded the state from amending its information. After receiving permission from the trial court, the state appealed from the dismissal and the Appellate Court reversed the judgment of the trial court. *Brundage II*, supra, 565.

The defendant claims that the Appellate Court improperly concluded: (1) that the trial court abused its discretion in granting his motion to dismiss the 2012 substitute information filed by the state on the basis that the remand order from the Appellate Court precluded the state from amending its information; and (2) that the trial court properly concluded that the charges in the 2012 substitute information were not barred by the doctrine of res judicata. We conclude that the Appellate Court properly construed its own rescript order. We further conclude that the doctrine of res judicata does not apply to the present case, where the only valid final judgment on which the defendant could rely to bar the state from filing the 2012 substitute

information is the decision of the Appellate Court in *Brundage I*, supra, 138 Conn. App. 22, which authorized the very proceedings that the defendant claims are barred by that judgment. Accordingly, we affirm the judgment of the Appellate Court.

The Appellate Court decisions in *Brundage I* and *Brundage II* set forth the following relevant facts and procedure. "In January, 1995, the defendant, the boyfriend of the victim's mother,[2] moved into the family home with the victim and her mother in Wolcott. At that time, the victim was eight years old and in third grade. Around this time, the defendant began sexually abusing the victim in the family home when the victim's mother was at work or had gone to bed.

"The abuse began with the defendant fondling the victim's breasts and vagina and digitally penetrating the victim's vagina. When the victim was ten years old and in sixth grade, the defendant began having forced penile-vaginal intercourse with her. Initially, the defendant abused the victim approximately twice each month, but as she became older, the abuse increased to approximately once each week. The victim did not report the abuse because she was afraid of the defendant and he threatened to leave her mother if she told her about the abuse. The abuse continued until approximately March, 2003, when the victim's mother discovered that the defendant was having an affair with another woman and the defendant moved out.

"On July 31, 2007, after reading a newspaper article discussing the deportation of the defendant's wife, the victim reported the sexual abuse to the Waterbury police. On October 20, 2007, the victim reported the sexual abuse to the Wolcott police. On November 13, 2007, the Waterbury police obtained a warrant for the defendant's arrest. On November 26, 2007, the Wolcott police obtained a warrant for the defendant's arrest. The defendant was charged with one count of sexual assault in the first degree and one count of risk of injury to a child in two separate informations. The victim testified about the abuse at trial, explaining that the defendant fondled and digitally penetrated her on more than 100 occasions and that the defendant had penile-vaginal intercourse with her on more than 100 occasions. The victim also testified as to five specific incidents of sexual abuse that occurred between 1995 and 2003. On November 10, 2009, the jury found the defendant guilty on all counts in both informations. On January 29, 2010, the court sentenced the defendant to a total effective term of thirty years imprisonment, execution suspended after twenty years, and twenty years probation." (Footnotes altered.) Id., 24–25.

Because the Appellate Court concluded that one of the four counts was completely time barred, and the remaining three counts were partially time barred, it reversed the judgments of conviction and remanded

the case to the trial court "for a new trial as to the charges that are not time barred." Id., 32. The rescript to the decision provides that "[t]he judgments are reversed and the cases are remanded with direction to dismiss count one of the Wolcott information and for a new trial as to the remaining charges." Id., 39–40.

"On November 26, 2012, the state filed a substitute information charging the defendant with two counts of kidnapping in the first degree, to which the defendant filed a written objection. In an attempt to resolve any ambiguity as to the scope of the remand order in *Brundage I*, the state on December 4, 2012, filed a motion for articulation with [the Appellate Court], which was dismissed. The trial court heard argument on the defendant's objection to the substitute information on January 24, 2013. At that time, the state argued that 'if you look at the decision of the Appellate Court, there hasn't been—[it] didn't decide the issue of whether or not the state could amend the charges.' Defense counsel argued that 'the reason we object is because we feel that the Appellate Court was very, very clear in its decision when it stated that the case was going to be reversed and remanded for [a] new trial for charges that are not time barred. . . . [W]e feel it's very clear the Appellate Court was referring to charges not time barred regarding the sexual assault charges and that would be it.' " (Footnote omitted.) *Brundage II*, supra, 148 Conn. App. 553–54. The trial court agreed with the defendant and dismissed the 2012 substitute information. The Appellate Court reversed the judgment of the trial court and remanded the case with direction to reinstate the 2012 substitute information and for further proceedings. Id., 565. This appeal followed.

I

We first address the defendant's claim that the Appellate Court improperly concluded that the trial court abused its discretion in granting the defendant's motion to dismiss the 2012 substitute information. The defendant claims that decisions of this court establish that the trial court properly concluded that the Appellate Court's remand order must be read to allow retrial only on the charges in the two informations under which he had previously been tried—amended to cure the statute of limitations defect—and to preclude the state from filing different charges in a substitute information. The defendant argues that the Appellate Court's remand order unequivocally limits the defendant's retrial to the remaining count of sexual assault in the first degree and the two counts of risk of injury because those were the only counts that were presented to and addressed by the Appellate Court in *Brundage I*. The state responds that such a narrow reading of the Appellate Court's remand order runs contrary to a basic principle of appellate adjudication—when a reviewing court has not decided a particular issue, the trial court, on

remand, is free to consider and rule on that issue. The state contends that because the issue of whether the state would be allowed to file a substitute information bringing new charges against the defendant was neither raised nor considered by the Appellate Court, its decision and rescript cannot be read to bar the state from doing so. We agree with the state.

We begin with the applicable standard of review. "Determining the scope of a remand is a matter of law because it requires the trial court to undertake a legal interpretation of the higher court's mandate in light of that court's analysis. . . . Because a mandate defines the trial court's authority to proceed with the case on remand, determining the scope of a remand is akin to determining subject matter jurisdiction. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Tabone*, 301 Conn. 708, 713–14, 23 A.3d 689 (2011).

"Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion*. . . . This is the guiding principle that the trial court must observe. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . . These principles apply to criminal as well as to civil proceedings. . . . The trial court cannot adjudicate rights and duties not within the scope of the remand." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 714–15. "It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed." (Internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 65, 689 A.2d 1097 (1997).

"We have also cautioned, however, that our remand orders should not be construed so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Internal quotation marks omitted.) Id., 65–66.

This court's decisions consistently have declined to read our remand orders narrowly to preclude the trial court from exercising its discretion to manage a case remanded to that court. See, e.g., *State* v. *Wade*, 297 Conn. 262, 276–77, 998 A.2d 1114 (2010) (trial court

did not exceed scope of remand when it resentenced defendant on all remaining counts rather than only on reversed count, notwithstanding Appellate Court's rescript directing sentence only on reversed count); *Higgins* v. *Karp*, 243 Conn. 495, 498, 706 A.2d 1 (1998) (trial court misinterpreted remand order, directing trial court to determine whether good cause existed to set aside defaults entered against defendant for failure to plead, to preclude introduction of additional evidence); *Rizzo Pool Co.* v. *Del Grosso*, supra, 240 Conn. 65–66 (in granting defendants' postremand motion for attorney's fees, trial court acted within scope of remand that merely directed it to render judgment in favor of defendants); *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 522–25, 686 A.2d 481 (1996) (trial court improperly interpreted remand order for further proceedings " 'for consideration of the zoning enforcement officer's claim for injunctive relief' " to prohibit parties from amending pleadings on remand).

This rule is consistent with the respective roles served by an appellate tribunal and the trial court. A reviewing court is limited to the issues presented to it by the parties to the appeal, and the court cannot and should not attempt to anticipate in its decision every procedural and factual eventuality that could arise upon remand to the trial court. By contrast, the trial court is in the best position to deal with procedural and factual developments in a case on remand and is the proper court to address such eventualities as they arise.

This court's decision in *Beccia* v. *Waterbury*, 192 Conn. 127, 470 A.2d 1202 (1984) (*Beccia II*), aptly illustrates this principle. The plaintiff appealed from the trial court's judgment rejecting his statutory challenge to the certification of another applicant as having ranked first in an examination for the position of fire marshal. *Beccia* v. *Waterbury*, 185 Conn. 445, 447–48, 441 A.2d 131 (1981) (*Beccia I*). On the basis of its construction of the language of the applicable statute, General Statutes (Rev. to 1981) § 29-45, this court reversed the judgment of the trial court and remanded the case to that court "for further proceedings not inconsistent with this opinion." Id., 463. Following this court's decision, the plaintiff commenced two independent actions in the trial court, one of which was an action in quo warranto that sought to oust the defendant—the applicant who had been given the post of fire marshal—from that position, and to declare the position vacant. *Beccia II*, supra, 129. The defendant attempted to assert as a defense that General Statutes (Rev. to 1981) § 29-45 was unconstitutional. Id., 131. The trial court declined to consider the defendant's constitutional defense, reasoning that it was beyond the scope of the remand. Id. This court disagreed that the failure of the defendant to raise the constitutional challenge in *Beccia I*, and the resulting failure of this court to consider the constitutionality of General Statutes (Rev. to 1981) § 29-45, lim-

ited the scope of the remand. We explained: "The constitutional issue was not before us in *Beccia I*. Our opinion does not address that question at all and cannot be read, as the plaintiff suggests, to uphold the statute sub silentio." Id., 133.

The principles that we relied on in *Beccia II* apply with equal force to the present case. In *Brundage I*, the Appellate Court did not have before it the question of whether the state could file, subsequent to a reversal of the defendant's judgments of conviction, a substitute information bringing different charges against the defendant. That question was completely outside the scope of the issues presented in the appeal, and to impose a rule that presumes that a reviewing court would address such an issue would require the reviewing court to act with a degree of prescience that cannot reasonably be expected, and, therefore, is completely inconsistent with the role played by a reviewing court. Instead, the court properly confined its decision to the issues presented to it in that appeal—including the question of whether the trial court improperly denied the defendant's motion to dismiss the sexual assault and risk of injury charges against him as time barred. *Brundage I*, supra, 138 Conn. App. 25. The court's remand order was properly tailored to instruct the trial court that the first count of one information, which was completely time barred, should be dismissed, and that, as to the remaining charges in the informations, the defendant was entitled to a new trial. Nothing in the court's decision in *Brundage I* envisioned that on remand, rather than pursuing the portion of the sexual assault and risk of injury charges that were not time barred, the state would elect to file a substitute information bringing new charges against the defendant. Therefore, nothing in the Appellate Court's decision in *Brundage I* considered whether the state should be allowed to file a substitute information or was prohibited from doing so. The Appellate Court correctly concluded in *Brundage II*, supra, 148 Conn. App. 555, that its decision in *Brundage I* held only that "the state could not proceed on any charges against the defendant that were time barred . . . ." Accordingly, the Appellate Court properly concluded that its remand order in *Brundage I* did not preclude the state from filing the 2012 substitute information.[3] Id., 558.

## II

Our conclusion that the Appellate Court's remand order did not prohibit the state from filing the 2012 substitute information bringing new charges against the defendant does not end our inquiry. The defendant also contends that the Appellate Court improperly concluded that the kidnapping charges in the state's 2012 substitute information were not barred by the doctrine of res judicata. We conclude that the doctrine of res judicata does not apply where the state has filed a

substitute information charging new offenses, following a defendant's successful appeal from judgments of conviction and a remand for a new trial.

We first observe what is *not* before the court in this appeal. The defendant has not claimed that the 2012 substitute information charging him with two counts of kidnapping violates his constitutional protection against being placed in double jeopardy, which is akin to the doctrine of res judicata, and ordinarily serves as the basis of a criminal defendant's claim that a former judgment bars a present prosecution. See *Sattazahn* v. *Pennsylvania*, 537 U.S. 101, 120 n.2, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003) (Ginsburg, J., dissenting) (noting that "[a] primary purpose served by the [d]ouble [j]eopardy [c]lause is akin to that served by the doctrines of res judicata and collateral estoppel—to preserve the finality of judgments" [internal quotation marks omitted]). Our analysis is therefore confined to whether the new charges violate the civil doctrine of res judicata. That doctrine includes two subcategories: issue preclusion, or collateral estoppel;[4] and claim preclusion, or res judicata. Because the defendant argues that the state is barred from bringing charges that it could have prosecuted in the original trial, but did not, the defendant in the present case relies on the doctrine of claim preclusion. We have explained that under "the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to *any other admissible matter which might have been offered for that purpose.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Ellis*, 197 Conn. 436, 462–63, 497 A.2d 974 (1985).

This court has expressed some reservations regarding the propriety of importing civil joinder rules to the criminal context by way of application of the doctrine of res judicata. Id., 471. Notwithstanding those reservations, however, the doctrine may be applied to preclude a claim if the court concludes that the three public policy principles, or purposes, served by the doctrine of res judicata, weigh in favor of preclusion. Those principles include the promotion of judicial economy, the prevention of inconsistent judgments, and the provision of repose, "by preventing a person from being harassed by vexatious litigation." (Internal quotation marks omitted.) Id., 465–66. The proper inquiry, this court stated, "looks to the actual litigation [that] has occurred in the former prosecution, to the claims raised, the issues decided, and the attendant expenditure of judicial resources. It further looks to the potential for inconsistent judgments which tend to undermine the integrity of the judicial system, and to the harassing effects of repetitious litigation on the defendant." Id., 473–74. It is unnecessary in the present case, however,

to consider whether the purposes served by the doctrine of res judicata support preclusion because, given the procedural background, particularly the substance of the Appellate Court's judgment and remand in *Brundage I*, the doctrine is inapplicable.

"[A]pplication of the [doctrine] of res judicata . . . depend[s] on the existence of a valid final judgment . . . ." (Internal quotation marks omitted.) *Beccia II*, supra, 192 Conn. 132. Our first task in determining whether the doctrine applies, therefore, is to identify the valid final judgment on which the defendant relies in invoking the doctrine. Because the defendant's judgments of conviction for sexual assault and risk of injury have been vacated, those judgments have no preclusive effect. 46 Am. Jur. 2d 739, Judgments § 449 (2006); see *Omimex Canada, Ltd.* v. *State*, 378 Mont. 490, 495, 346 P.3d 1125 (2015) ("when a judgment is reversed, the judgment cannot serve as the basis for a disposition on the grounds of res judicata or collateral estoppel [issue preclusion]" [internal quotation marks omitted]); *California Dept. of Social Services* v. *Thompson*, 321 F.3d 835, 847 (9th Cir. 2003) (same). The only valid final judgment that remains in the present case is the judgment of the Appellate Court in *Brundage I*, which reversed the defendant's judgments of conviction and remanded the case to the trial court "with direction to dismiss count one . . . *and for a new trial as to the remaining charges*." (Emphasis added.) *Brundage I*, supra, 138 Conn. App. 39–40.

As we have explained in part I of this opinion, the Appellate Court properly held that its decision in *Brundage I* was limited to the conclusion that "the state could not proceed on any charges against the defendant that were time barred . . . ." *Brundage II*, supra, 148 Conn. App. 555. Accordingly, the only existing valid final judgment in the present case—the judgment of the Appellate Court—expressly directed further proceedings, specifically, a new trial. The doctrine of claim preclusion, therefore, is simply inapplicable given the substance of the Appellate Court's judgment and the remand. Claim preclusion, when it applies, "is an *absolute bar* to a subsequent action . . . between the same parties or those in privity with them, upon the same claim." (Emphasis added; internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 555, 848 A.2d 352 (2004). The substance of the judgment of the Appellate Court in the present case, however, prevents it from being an absolute bar to further proceedings. Indeed, it would be bizarre to conclude that the judgment of the Appellate Court had a claim preclusive effect on the retrial of the defendant in light of the fact that the court's decision expressly ordered that there be a retrial. Put another way, the application of the doctrine of res judicata would require rendering the remand order of the Appellate Court a nullity. The Appellate Court properly concluded that the kidnapping

charges are not barred by the doctrine of res judicata.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, ZARE-LLA, EVELEIGH and VERTEFEUILLE, Js., concurred.

[1] We granted the defendant's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issues: (1) "Did the Appellate Court correctly construe its own rescript in *State* v. *Brundage*, 138 Conn. App. 22, 50 A.3d 396 (2012), and thereby properly conclude that the trial court abused its discretion in sustaining the defendant's objection to a substitute information filed by the state after remand?"; and (2) "If the answer to the first question is in the affirmative, did the Appellate Court properly conclude that the doctrine of res judicata did not bar a retrial on the kidnapping charges?" *State* v. *Brundage*, 311 Conn. 943, 89 A.3d 351 (2014).

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] We observe that the defendant conceded at oral argument before this court that the Appellate Court's remand order would not preclude the state from entering a nolle prosequi on the sexual assault and risk of injury charges in the present case, then filing a new information charging the defendant with kidnapping under a different docket number. In that event, the defendant would not be entitled to any credit for the time that he has served in connection with the present prosecution. Accordingly, the procedure followed by the state in the present case is more beneficial for the defendant.

[4] The doctrine of collateral estoppel or issue preclusion "is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." (Internal quotation marks omitted.) *State* v. *Ellis*, 197 Conn. 436, 463, 497 A.2d 974 (1985). The defendant concedes that the state's kidnapping charges were not actually litigated and determined in the first trial, so the doctrine of collateral estoppel is inapplicable to his claim that the state is precluded from filing the 2012 substitute information.