******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JEFFREY H.*
## (AC 38113)

Sheldon, Mullins and Harper, Js.

*Syllabus*

Convicted, following a jury trial, of three counts of the crime of sexual assault in the first degree in connection with his alleged sexual abuse of his daughter, N, the defendant appealed to this court. On the eve of the defendant's scheduled trial date, the state discovered that the statute of limitations on the conduct supporting the charges in the original information had expired, and the court granted the state's request for a continuance. During the continuance, the state requested that the state police detective assigned to the case, F, conduct an additional interview with N, and, in that interview, N made allegations against the defendant of assaults that occurred in a time period that fell within the statute of limitations. On appeal, the defendant claimed, inter alia, that the trial court violated his constitutional right to present a defense by preventing him from cross-examining F relating to whether N made the new allegations against the defendant only upon learning that the statute of limitations barred her original allegations, and by excluding testimony from S, a physician, and a letter S had written, which included a notation that N had a history of a previous sexual assault. *Held*:

1. The trial court did not abuse its discretion or violate the defendant's constitutional right to present a defense by excluding testimony concerning the statute of limitations issue that the defendant sought to introduce through the cross-examination of F; the defendant was permitted to conduct a sufficient inquiry into his defense theory that N had fabricated the new allegations, including eliciting testimony from F about the continuance of the originally scheduled trial and F's involvement in the case, and evidence that the state had asked F to obtain another statement from N after the continuance had been granted, and the defendant failed to cross-examine N regarding her motivations for detailing the abuse alleged in her latest statement to F or if she changed her allegations due to pressure from authority figures, and failed to ask F, who could not testify regarding N's motivations, whether he had pressured N to make the new allegations because of a problem with the statute of limitations.

2. The trial court did not abuse its discretion in excluding as irrelevant S's testimony and letter, which the defendant sought to admit to rebut certain consciousness of guilt evidence presented by the state; the foundation for S's letter was wholly speculative, as S was unable to provide any insight as to where or from whom he had obtained the information in the letter about N's history of sexual abuse, or to which of certain separate instances of sexual assault involving N the notation referred, and the defendant failed to demonstrate any open and visible connection between S's notation about N's history of sexual abuse and the state's consciousness of guilt evidence.

3. The defendant could not prevail on his claim that the trial court abused its discretion and deprived him of his right to due process by admitting into evidence certain out of context interview statements that he made following a polygraph examination he had taken and failed; that court properly concluded that the defendant's statements, which referred to the fact that he felt sexually aroused by N and that he locked himself in his bedroom because he was afraid N was going to kill him, qualified as an exception to the rule against hearsay for an admission by a party opponent under the applicable provision of the Code of Evidence (§ 8-3 [1]), as they were relevant and material to show the defendant's consciousness of guilt and were not so prejudicial as to risk injustice as a result of their admission, and the court excluded any statements made in response to the fact that the defendant had failed the polygraph, including any statement related to his change of response from his earlier full denial of any inappropriate behavior.

Argued March 13—officially released September 26, 2017

Substitute information charging the defendant with three counts of the crime of sexual assault in the first degree, brought to the Superior Court in the judicial district of Litchfield and tried to the jury before *Marano, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Matthew D. Dyer*, with whom, on the brief, was *Kristen Mostowy*, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *David S. Shepak*, state's attorney, and *Dawn Gallo*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Jeffrey H., appeals from the judgment of conviction, rendered after a jury trial, of three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). On appeal, the defendant claims that the trial court (1) abused its discretion by preventing him from pursuing certain inquiries on cross-examination, thereby violating his sixth amendment right to present a defense, and (2) abused its discretion by admitting into evidence out-of-context portions of his interview conducted following a polygraph examination, in violation of his right to due process. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, N, is the defendant's daughter. The defendant repeatedly sexually assaulted N from the time she was seven or eight years old until she was eleven years old. Most of the assaults during this period took place when N and the defendant went fishing together. The assaults recommenced when N was approximately twelve or thirteen years old and continued until she was approximately seventeen years old. Many of the assaults included threats of violence against N, her mother, and her sister. On several occasions, the defendant warned N that if she told anyone about the assaults, he would kill her, her mother, and her sister. On occasion, the defendant brandished a weapon, including a double-barreled shotgun, while committing an assault.

N did not report the defendant's conduct until 2009. At that time, the defendant and N's mother had divorced, and N was living with her mother and her sister in Massachusetts. N kept a journal as part of a course of psychiatric treatment that she received from Stefanie Lindahl, a psychiatrist. N documented her father's conduct in the journal and shared it with Lindahl. N reported the assaults to the police on July 31, 2009.

Detective William Flynn, a major crimes detective with the Connecticut State Police and a member of the child abuse investigative team, was assigned to investigate N's report. Throughout the investigation, Flynn interviewed N and took written statements from her. At the request of the state's attorney, Flynn used his police vehicle to drive N as she directed him to various locations where the abuse had occurred. These trips prompted N to remember additional incidents of sexual assault perpetrated by the defendant.

The defendant was arrested on September 29, 2010. The original information charged the defendant with offenses that were alleged to have occurred between March, 1997 and 2000. The state filed a substitute long form information on March 5, 2015,[1] charging the defendant with three counts of sexual assault in the first

degree in violation of § 53a-70 (a) (1) for offenses occurring in 2002, 2003, and 2004.

On March 31, 2015, the jury found the defendant guilty of three counts of sexual assault in the first degree. The court sentenced the defendant to a term of twelve years of imprisonment and five years of special parole on each count, to run consecutively, resulting in a total effective sentence of thirty-six years of imprisonment and fifteen years of special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court made two erroneous evidentiary rulings in violation of his right, under the sixth and fourteenth amendments to the federal constitution, to present a defense. Specifically, the defendant asserts that the trial court improperly prohibited him from cross-examining Flynn about a statute of limitations issue that the state had discovered on the eve of the original trial date. In addition, the defendant argues that the trial court erroneously barred testimony from Joseph C. Scirica, one of N's former treating physicians, regarding a notation in a 2006 letter in his file that N had a "remarkable history of a molestation/sexual assault." The state responds that the trial court properly excluded both the evidence relating to the statute of limitations and Scirica's letter. For the reasons that follow, we agree with the state.

The defendant's claims implicate both his constitutional right to present a complete defense, as well as the proper constraints that the rules of evidence impose on that right. Therefore, our analysis has two parts. First, we must determine whether the trial court abused its discretion in making certain evidentiary rulings regarding the statute of limitations and Scirica's letter. Second, if we find that the trial court abused its discretion, we must determine whether that caused a violation of the defendant's constitutional rights.

Because our analysis of each of the defendant's claims in this part of the opinion relies on the same legal principals, we first set forth our standard of review for each of those claims. "The sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, [a defendant] must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated." (Footnote omitted; internal quotation marks omitted.) *State* v. *Wright*, 273 Conn. 418, 424, 870 A.2d

1039 (2005). "Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 23, 1 A.3d 76 (2010).

The defendant's sixth amendment right to present a defense is satisfied "when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Daniel B.*, 164 Conn. App. 318, 341, 137 A.3d 837, cert. granted on other grounds, 323 Conn. 910, 149 A.3d 495 (2016). "[R]estrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . To establish an abuse of discretion, [the defendant] must show that restrictions imposed [on the] cross-examination were clearly prejudicial." (Citation omitted; internal quotation marks omitted.) Id., 341–42.

"Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Santos*, 318 Conn. 412, 423, 121 A.3d 697 (2015).

A

The following additional facts and procedural history are relevant to the defendant's statute of limitations claim. The defendant's trial originally was scheduled to begin on January 13, 2014. On the eve of trial, however, the state discovered that the statute of limitations had expired on the conduct supporting the original charges. The state sought a continuance, which the trial court granted. During the continuance, the state's attorney requested that Flynn conduct an additional interview with N. In this interview, N made additional allegations against the defendant pertaining to more recent sexual assaults that fell within the statute of limitations. These new allegations formed the basis for the substitute long form information that the state filed on March 5, 2015, and under which the defendant was tried and convicted.

At trial, the defendant attempted to establish, through cross-examination of Flynn, that the state's discovery of the statute of limitations issue prompted N's new

allegations. The state objected on relevance grounds. In an offer of proof outside the presence of the jury, Flynn testified: "I knew there was an issue with the statute of limitations, I—that's about all I knew, there was a—we didn't have a large discussion on that." The trial court declined to allow any questioning regarding Flynn's "awareness of the statute of limitation[s] issue or that the—that issue demolished the [s]tate's case or anything of that nature." The trial court, however, allowed the defendant to inquire regarding Flynn's knowledge of the January, 2014 trial date and continuance, his involvement in trial preparations, and his role in the taking of an additional statement from N at the request of the state's attorney in January, 2014.

On appeal, the defendant argues that the trial court abused its discretion in excluding testimony regarding the statute of limitations issue during cross-examination of Flynn, thereby violating the defendant's sixth amendment right to present a defense. The defendant asserts that until the state discovered the statute of limitations issue, N was "remarkably consistent on the ages of the alleged sexual abuse" as being between the ages of eight and eleven. Because the trial court did not allow Flynn to testify about the statute of limitations issue, the defendant argues that he was left unable to explain his defense that N fabricated the newer allegations. As previously noted, to the extent that the defendant challenges an evidentiary ruling of the trial court, we review the claim for abuse of discretion. We conclude that the trial court did not abuse its discretion in excluding this evidence and also did not violate the defendant's sixth amendment right.

Our resolution of this claim is guided by *State* v. *Andrews*, 102 Conn. App. 819, 927 A.2d 358, cert. denied, 284 Conn. 911, 931 A.2d 932 (2007). In *Andrews*, the defendant argued, inter alia, that the trial court violated his sixth amendment right to present a defense by improperly limiting his cross-examination of certain witnesses. Id., 824–25. The defendant was charged with sexual assault in the first degree, sexual assault in the second degree and risk of injury to a child. Id., 821. At trial, the defendant was precluded from introducing certain evidence regarding details of the defendant's sexual relationships with other members of the victim's family. Id., 825.

The court in *Andrews* held that the defendant's sixth amendment right to present a defense was not violated. Id., 827. The court explained that the evidence presented made the jury aware of the defendant's complicated relationship with the victim's family and that members of the victim's family may have had various motives for corroborating the victim's testimony. Id. The court concluded that the trial court did not abuse its discretion in precluding additional details of the defendant's sexual relationships, as they were not rele-

vant to the issue of whether the defendant had sexually assaulted the victim. Id.

Applying the analysis in *Andrews* to the present case, we conclude that the trial court did not abuse its discretion in excluding testimony of the statute of limitations issue. The defendant argued that he attempted to present evidence that N changed her story upon learning that the statute of limitations for the original charges had expired. Because N "was remarkably consistent on the ages of the alleged sexual abuse," the defendant argued that evidence that the statute of limitations barred the original charges was necessary to show that the only reason for the new allegations was to save the state's case.

Similar to *Andrews*, the defendant in this case was able to conduct sufficient inquiry into his defense theory. Specifically, the defendant elicited testimony from Flynn about the continuance of the originally scheduled trial and Flynn's involvement in the case. In addition, the defendant presented evidence that the state had asked Flynn to obtain another statement from N after the continuance of the original trial.

The defendant attempted to introduce evidence of the statute of limitations issue through Flynn, not N. The defendant never cross-examined N regarding her motivations for detailing the abuse that occurred in 2002, 2003, and 2004, only after she learned that the statute of limitations issue barred the original charges. The defendant could have asked N if she was changing her story due to pressure from authority figures such as her mother or the state's attorney, but did not do so. Instead, the defendant attempted to address this topic in his cross-examination of Flynn; however, Flynn could not have testified about N's motives and the defendant failed to ask Flynn whether he pressured N to make new allegations because of the problem with the statute of limitations. He could not testify, without speculating, about why N was detailing the later abuse at that particular time. Therefore, we conclude that the trial court did not abuse its discretion in refusing to allow the defendant to cross-examine Flynn on the statute of limitations issue and that this was a reasonable constraint on the defendant's sixth amendment right to present a defense. See *State* v. *Andrews*, supra, 102 Conn. App. 826–27.

## B

The defendant next claims that the trial court abused its discretion by excluding Scirica's letter and testimony. He argues that exclusion of this evidence prevented him from rebutting the state's consciousness of guilt argument. The state argues that the trial court did not abuse its discretion in excluding this evidence. We agree with the state.

The following facts are relevant to the defendant's

claim regarding the exclusion of Scirica's letter. On April 1, 2007, Lindahl received a letter from the defendant stating, "I am not a sexual predator, nor am I an abusive father." The defendant sent this letter two years prior to N's initial allegations of sexual assault against him. Prior to the time the defendant sent this letter, N's primary care physician had referred N to Scirica for treatment in 2006. Following that referral, Scirica sent a letter to N's primary care physician with a notation that N had a "remarkable history of a molestation/sexual assault."

At trial, the defendant attempted to introduce Scirica's letter into evidence and to have Scirica testify about his recollection of this history of molestation or sexual assault. The state objected, arguing that the letter constituted inadmissible hearsay within hearsay. Scirica testified in an offer of proof regarding the 2006 letter. Scirica did not have any independent recollection of the letter, nor could he say whether it was N, her mother, or someone else who had provided him with N's medical history. Scirica noted that, as a mandated reporter, he would have to report any fresh complaints of sexual assault, but did not do so in this case. Scirica could not state with any certainty the origin of the information about N's history of sexual assault.

Thereafter, the trial court excluded Scirica's testimony and letter because the hearsay quality and uncertain source of the information rendered it unreliable and irrelevant. In its ruling, the trial court noted that "[t]here is no way to tell through the letter or [Scirica's] testimony whether the phrase '[a] remarkable history of a molestation/sexual assault' refers to the alleged conduct of the defendant or other allegations of sexual misconduct that have been presented to the jury, namely the alleged incidents in school and at Silver Hill [Hospital]."[2]

The defendant argues that the trial court's refusal to allow Scirica to testify about the notation in his letter that N had a "remarkable history of a molestation/sexual assault" prevented him from presenting his defense. The defendant asserts that this evidence would have given context to the defendant's April 1, 2007 letter to Lindahl, which stated: "I am not a sexual predator, nor am I an abusive father." The state used the defendant's letter as evidence of his consciousness of guilt, and the defendant sought to introduce Scirica's letter as a way to rebut the state's argument. The state argues that the trial court properly excluded the evidence. The state asserts that the admission of Scirica's testimony and letter would have forced the jury to speculate as to which instance of abuse the notation specifically referred.

The defendant challenges the trial court's evidentiary ruling regarding Scirica's testimony and letter. As previously discussed, "we will set aside an evidentiary rul-

ing only when there has been a clear abuse of discretion." (Internal quotation marks omitted.) *State* v. *Santos*, supra, 318 Conn. 423.

The court's analysis in *State* v. *Davis*, supra, 298 Conn. 1, informs our resolution of this claim. In *Davis*, the victim of a shooting testified that he hesitated to cooperate with the police because he did not want to jeopardize the close relationship he had with his girlfriend. Id., 20. During his cross-examination of the victim, the defendant sought to undermine the victim's credibility with evidence that the victim had assaulted his girlfriend. Id., 20–21. The defendant intended to use this evidence to show that the victim did not have a close relationship with his girlfriend, and therefore lied about why he hesitated to cooperate with the police. Id., 21. The trial court precluded evidence that the victim assaulted his girlfriend, finding that it was irrelevant. Id., 21.

In *Davis*, our Supreme Court held that it was not an abuse of the trial court's discretion to exclude the evidence because the foundation for the evidence was "wholly speculative." Id., 24. The defendant in *Davis* provided no other evidence that the victim lied about his reason for not cooperating with the police. See id. Additionally, the defendant presented no evidence about when the victim assaulted his girlfriend. Id., 24. Our Supreme Court reasoned that, if the assault occurred after the shooting, it would not have had any bearing on the victim's decision not to cooperate with the police on the day of the shooting. Id. The Supreme Court determined that "defense counsel failed to demonstrate any open and visible connection between the alleged fight with [the victim's girlfriend] and the victim's decision not to tell [the] police the identities of his assailants on [the day of the shooting]." Id.

In the present case, the defendant attempted to introduce Scirica's testimony and letter to explain the timing of the defendant's April 1, 2007 letter to Lindahl. The defendant sought to use this evidence from Scirica to counteract the state's use of his letter to Lindahl to prove consciousness of guilt on the assumption that the defendant's April 1, 2007 letter to Lindahl appeared to be spontaneous and not in response to some allegation against him. The defendant argued that the admission of Scirica's letter would show that, contrary to the state's assertions, allegations of sexual assault had occurred prior to the defendant's April 1, 2007 letter, and that the defendant's letter was a reaction to the allegations contained in Scirica's letter.

As we have already discussed, there was no evidence in the record as to where or from whom Scirica had obtained the information of N's "remarkable history of a molestation/sexual assault." Furthermore, there is no evidence in the record indicating which instances of sexual assault the notation refers to—the incident at

school, the incident at Silver Hill Hospital, or the conduct alleged against the defendant. Because Scirica could not testify as to the origin of the information or to which allegations of abuse the notation referred, this testimony would have caused the jury to stray too far into the realm of speculation.

Similar to *Davis*, the foundation for this evidence is "wholly speculative," as Scirica could not provide any insight about the source of the notation in his letter or to what the notation was referring. See *State* v. *Davis*, supra, 298 Conn. 24. If the notation in Scirica's letter was not in reference to conduct N alleged against the defendant, it would have no impact on the defendant's decision to write the April 1, 2007 letter to Lindahl. See id. We agree with the trial court that Scirica's letter also could have been referring to the instances of abuse that N suffered at school or as a patient at Silver Hill Hospital. Therefore, the defendant "failed to demonstrate any open and visible connection between" Scirica's notation about N's "history of a molestation/sexual assault" and the defendant's April 1, 2007 letter to Lindahl. See id. Accordingly, the trial court did not abuse its discretion in excluding Scirica's testimony or letter as irrelevant, and the proper application of this evidentiary rule to the defendant's case was a permissible restraint on his right to present a defense.

II

The defendant's second claim on appeal is that the trial court's admission of portions of an interview conducted with the defendant following a polygraph examination was an abuse of discretion and violated his right to due process. Specifically, the defendant argues that the admitted portions of his interview do not constitute positive assertions of fact and, therefore, are not admissible under the statement by a party opponent exception to the hearsay rule. The defendant also argues that the only way for the jury to have received the proper context of the admitted statements would have been to admit information regarding the polygraph examination itself, which is not admissible in Connecticut trial courts. See *State* v. *Porter*, 241 Conn. 57, 94, 698 A.2d 739 (1997). The defendant asserts that without the ability to present this necessary evidence, the trial court's admission of the interview statements deprived him of his right to due process. We disagree.

The following additional facts are relevant to this claim. The defendant agreed to submit to a polygraph examination on September 20, 2010. A three and one-half hour interview of the defendant followed the exam. The state's attorney's office prepared a transcript of the interview. The state, through a motion in limine, sought to admit portions of the interview at trial through the testimony of Flynn. Specifically, the state sought to introduce statements related to the following three areas: (1) that the defendant felt sexually aroused by

N as she was developing; (2) that the defendant locked his bedroom door at night because he was worried that N was going to kill him; and (3) that the defendant changed his response "from his earlier full denial of any inappropriate behavior."

The trial court ruled that no statements would be admitted that were made in response to the fact that the defendant had failed the polygraph. Accordingly, the trial court excluded the state's third area of inquiry regarding the defendant's change in response to the allegations. The trial court reasoned that the third area of inquiry was inadmissible because the likely "defense argument is that his response changed because there was an intervening polygraph . . . ."

The court allowed Flynn to testify regarding the other two areas of inquiry. In regard to the defendant feeling aroused by N, Flynn testified that "[the defendant] had stated words to the effect that while she was developing, uh, he began to feel things of—of becoming aroused looking at [N], but said 'that's my daughter, uh, it's got to stop there, it's my daughter' or words to that effect." Flynn further testified concerning the defendant's statements that he feared for his safety: "He had said words to the effect that he was locking his bedroom door at night, because he was afraid [N] was [going to] kill him." The trial court allowed these statements into evidence as admissions by a party opponent.

In his brief, the defendant argues that even though the trial court would not admit any statement that was in response to the failed polygraph examination, "all of the defendant's statements were intertwined with the failed polygraph results; therefore, all of his statements would have been in response to the failed polygraph examination." The state responds that the admitted statements were material and relevant to show the defendant's consciousness of guilt. The defendant claims that the trial court improperly admitted the interview statements because (1) the statements were not positive assertions of fact and, therefore, did not fall under a hearsay exception, and (2) admission of the out-of-context statements violated the defendant's right to due process. We disagree.

We begin by setting forth the standard of review for determining whether the trial court properly interpreted § 8-3 of the Connecticut Code of Evidence, which sets forth certain hearsay exceptions. "To the extent a trial court's [ruling regarding] admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary." (Internal quotation marks omitted.) *State* v. *Miller*, 121 Conn. App. 775, 780, 998 A.2d 170, cert. denied, 298 Conn. 902, 3 A.3d 72 (2010). A trial court's ruling on the applicability of the hearsay rule or its exceptions is a legal determination requiring plenary review. Id. "We review the trial court's decision to admit evidence, if premised on

a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) Id. "To establish an abuse of discretion, [the defendant] must show that the restrictions imposed . . . were clearly prejudicial. . . . If, after reviewing the trial court's evidentiary rulings, we conclude that the trial court properly excluded the proffered evidence, then the defendant's constitutional claims necessarily fail. . . . If, however, we conclude that the trial court improperly [admitted] certain evidence, we will proceed to analyze [w]hether [the limitations the court imposed] . . . [were] so severe as to violate [the defendant's rights] . . . . Our standard of review for this constitutional inquiry is de novo." (Citations omitted; internal quotation marks omitted.) *State* v. *Santos*, supra, 318 Conn. 423.

A

We first address the defendant's hearsay argument. Because the defendant challenges the trial court's interpretation of § 8-3 of the Connecticut Code of Evidence, our review is plenary. Under § 8-3 (1) of the Connecticut Code of Evidence, the hearsay rule does not exclude "[a] statement [that is] being offered against a party and is (A) the party's own statement . . . ." "It is an elementary rule of evidence that an admission of a party may be entered into evidence as an exception to the hearsay rule. . . . In the criminal context, an admission is the avowal or acknowledgment of a fact or of circumstances from which guilt may be inferred, and only tending to prove the offenses charged, but not amounting to a confession of guilt . . . ." (Internal quotation marks omitted.) *State* v. *Paul B.*, 143 Conn. App. 691, 711–12, 70 A.3d 1123 (2013), aff'd, 315 Conn. 19, 105 A.3d 130 (2014). "An admission of a party opponent need only traverse the low hurdles of relevancy and materiality to survive an objection to its admission into evidence. . . . Such an admission is admissible even if it is conclusory or not based on personal knowledge. . . . The admission need not even be wholly reliable or trustworthy." (Citations omitted.) *State* v. *Markeveys*, 56 Conn. App. 716, 720, 745 A.2d 212, cert. denied, 252 Conn. 952, 749 A.2d 1203 (2000).

We conclude that the trial court correctly interpreted § 8-3 (1) of the Connecticut Code of Evidence in determining that the interview statements qualify as admissions by a party opponent. During the interview, the defendant stated that "the only thing is . . . when [N] was developing . . . you feel like something like she's sexually aroused me at one point . . . ." The defendant also stated: "I was locking myself in the bedroom because I thought she was going to kill me."

Those were oral assertions that were relevant and material to the case. See *State* v. *Paul B.*, supra, 143 Conn. App. 712 (court held that defendant's statement, "well if the boys said I did that, then maybe I did . . .

I just don't remember," was admissible admission by party opponent in response to sexual assault allegations). Additionally, the defendant's statements had a "tendency to make the existence of the fact that the defendant engaged in the alleged conduct more probable than it would be without [their] admission." Id. It is true that these statements do not amount to a direct confession of guilt; however, guilt can be inferred from the statements. Accordingly, the trial court properly interpreted § 8-3 (1) of the Connecticut Code of Evidence in finding that the statements fall under the statement by a party opponent exception to the hearsay rule.

B

We now turn to the defendant's claim that admitting the interview statements made subsequent to the polygraph examination out of context violated the defendant's right to due process. We review this claim for an abuse of discretion.

"Due process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error which may occur to a party upon microscopic examination of the trial record. . . . Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because the label placed on it by a party . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 49, 770 A.2d 908 (2001). "Rules for the admission and exclusion of evidence should be found offensive to notions of fundamental fairness embodied in the United States Constitution only when, (1) without a rational basis they disadvantage the defendant more severely than they do the [s]tate, or (2) [they] arbitrarily exclude reliable defensive evidence without achieving a superior social benefit." (Internal quotation marks omitted.) *State* v. *Porter*, supra, 241 Conn. 134.

"Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise . . . ." Conn. Code Evid. § 4-3. Although all adverse evidence is damaging to a defendant's case, "it is inadmissible only if it creates undue prejudice so that it threatens injustice were it to be admitted." (Internal quotation marks omitted.) *State* v. *Warren*, 100 Conn. App. 407, 419, 919 A.2d 465 (2007). "Unfair prejudice occurs where the facts offered may unduly arouse the [jurors'] emotions, hostility, or sympathy . . . ." (Internal quotation marks omitted.) *State* v. *Bellamy*, 149 Conn. App. 665, 677, 89 A.3d 927 (2014), aff'd, 323 Conn. 400, 143 A.3d 655 (2016). The prejudicial effect of polygraph evidence greatly exceeds its probative value. See *State* v. *Porter*, supra, 241 Conn. 93. Therefore, polygraph evidence is "per se inadmissible in all trial court proceedings in which the rules of evidence apply, and for all trial purposes, in Connecticut courts." (Footnotes omitted.) Id., 94.

Generally, evidence of consciousness of guilt must "have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render [such] evidence . . . inadmissible but simply constitutes a factor for the jury's consideration." (Internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 670, 31 A.3d 1012 (2011). In other words, evidence of consciousness of guilt must "tend to support a relevant fact even to a slight degree, so long as not prejudicial or merely cumulative." Id., 669. "[I]t is the province of the jury to sort through any ambiguity in the evidence in order to determine whether [such evidence] warrants the inference that [the defendant] possessed a guilty conscience." (Internal quotation marks omitted.) Id., 672.

After reviewing the record, we conclude that the trial court did not abuse its discretion in admitting the interview statements. The statements admitted were certainly relevant, as they had "a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 261, 796 A.2d 1196 (2002). Although the statements were adverse to the defendant, they were not so prejudicial as to risk injustice as a result of their admission into evidence.

Moreover, the trial court took care not to admit any statement by the defendant that could be explained by reference to the failed polygraph. For example, the trial court excluded any statements relating to the defendant's change of response. Specifically, the trial court excluded any statements showing that the defendant did not completely deny the allegations after failing the polygraph, as the fact that the defendant failed the polygraph examination could be used to explain such statements.

Rather the trial court admitted only the statements that the defendant felt aroused by N and that the defendant feared N was going to kill him as evidence of his consciousness of guilt. The statements admitted were relevant to show the defendant's consciousness of guilt, and supported that inference at least to " 'a slight degree.' " See *State* v. *Coccomo*, supra, 302 Conn. 669. Therefore, the trial court did not abuse its discretion in admitting the interview statements for the purpose of showing the defendant's consciousness of guilt. Because we conclude that the trial court did not abuse its discretion in admitting the interview statements, we conclude that the defendant was not deprived of his right to due process.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] In the original information, filed on September 29, 2010, the state charged

the defendant with offenses alleged to have occurred between March, 1997 and 2000. At the time trial was scheduled in January, 2014, the state discovered that the statute of limitations period for those offenses had expired, notwithstanding an amendment to the statute extending the limitations period for sexual assault. See General Statutes § 54-193a; see also *State* v. *Brundage*, 138 Conn. App. 22, 29, 50 A.3d 396 (2012) (holding that amendment to statute extending limitations period for sexual assault did not apply retroactively and only applied to offenses occurring after May 22, 2002).

[2] N testified at trial that, in addition to the sexual assaults perpetrated by the defendant, she suffered sexual assaults committed by others at a school in Sharon and while receiving treatment as a patient at Silver Hill Hospital in New Canaan.

---