******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RICHARD BRUNDAGE
(AC 35419)

Gruendel, Keller and Borden, Js.

*Argued November 14, 2013—officially released March 11, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, Crawford, J. [judgments in prior case];
Fasano, J. [motion to substitute information].)

*Kathryn W. Bare*, assistant state's attorney, with
whom, on the brief, were *Maureen Platt*, state's attorney, and *Cynthia S. Serafini*, senior assistant state's
attorney, for the appellant (state).

*Raymond L. Durelli*, assigned counsel, for the appellee (defendant).

*Opinion*

GRUENDEL, J. This case concerns the proper scope of a remand order. In *State* v. *Brundage*, 138 Conn. App. 22, 50 A.3d 396 (2012) (*Brundage I*), this court reversed the judgments of conviction of the defendant, Richard Brundage, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). We concluded in relevant part that "[o]f the four counts in the operative informations, only count one . . . is completely time barred [under General Statutes (Rev. to 1993) § 54-193a]. . . . [T]he other three counts are partially untimely and partially timely." (Footnote omitted.) Id., 32. We further rejected the defendant's claim that this court "should set aside the judgments of conviction and direct the trial court to dismiss the partially untimely charges, rather than remand the cases for a new trial," holding that "[r]etrial here is not barred by the double jeopardy clause of the fifth amendment." Id. We thus remanded the matter to the trial court for a new trial on those charges that are not time barred under the aforementioned statute. Id.

On remand and prior to the commencement of that new trial, the state filed a substitute information charging the defendant with two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2). The defendant filed an objection to that substitute information, arguing, inter alia, that the new charges contained therein exceeded the scope of the remand from this court. The trial court agreed and sustained the defendant's objection. The court thus dismissed the substitute information and thereafter granted the state permission to appeal pursuant to General Statutes § 54-96.[1]

In this appeal, the state contends that the court improperly concluded that the remand order in *Brundage I* precluded the state from amending its information to charge the defendant with kidnapping in the first degree at his second trial. We agree and, accordingly, reverse the judgment of the trial court.

The relevant facts are not disputed. In *Brundage I*, the defendant was charged in two separate informations, which were consolidated for trial. This court reversed the defendant's judgments of conviction and remanded the matter to the trial court "for a new trial as to the charges that are not time barred." *State* v. *Brundage*, supra, 138 Conn. App. 32. The rescript to the decision provides that "[t]he judgments are reversed and the cases are remanded with direction to dismiss count one of the Wolcott information and for a new trial as to the remaining charges." Id., 39–40. That decision officially was released on September 11, 2012.

On November 26, 2012, the state filed a substitute

information charging the defendant with two counts of kidnapping in the first degree, to which the defendant filed a written objection. In an attempt to resolve any ambiguity as to the scope of the remand order in *Brundage I*, the state on December 4, 2012, filed a motion for articulation with this court,[2] which was dismissed. The trial court heard argument on the defendant's objection to the substitute information on January 24, 2013. At that time, the state argued that "if you look at the decision of the Appellate Court, there hasn't been—[it] didn't decide the issue of whether or not the state could amend the charges." Defense counsel argued that "the reason we object is because we feel that the Appellate Court was very, very clear in its decision when it stated that the case was going to be reversed and remanded for [a] new trial for charges that are not time barred. . . . [W]e feel it's very clear the Appellate Court was referring to charges not time barred regarding the sexual assault charges and that would be it."

In ruling from the bench, the court agreed with the defendant, stating in relevant part: "It would seem to me what [the Appellate Court in *Brundage I*] contemplated was an amendment that would put the remaining charges within the period of the statute of limitations and an immediate retrial because, after all, the parties had been through an entire proceeding, a trial, a sentencing and appellate period, a remand. I don't think they contemplated starting again with new charges that would require discovery, that would require issues raised just in terms of any new charge that would come before the court. . . . I think the remand was clear, and I think the reason, the idea of the remand was that simply the state would amend the charges to reflect a time period within the statute of limitations and go back to trial fairly immediately as opposed to an entirely new prosecution. . . . Kidnapping was not charged in any effect during the prior proceedings. They would be, in effect, new charges that would allow for discovery and motions to be filed. It would be going back to day one as far as the arrest and prosecution of this defendant. So I don't think it was contemplated by the Appellate Court. I think I have to strictly construe any remand order. The remand order . . . [concluded that] the cases should be remanded for a new trial as to the charges that are not time barred. And I think that's what the state is limited to with respect to this prosecution. . . . [W]ith respect to this prosecution, the motion for substitute information charging kidnapping is denied. So the objection is sustained as to the substituted information." From that judgment, the state now appeals.

The state claims that the trial court improperly sustained the defendant's objection. It argues that the state, on remand from this court following our decision in *Brundage I*, was not precluded from filing additional charges via substitute information in the defendant's prosecution. The defendant maintains that the court

properly dismissed the substitute information as beyond the bounds of the *Brundage I* remand and, further, that the charges contained therein are barred by the doctrine of res judicata. We agree with the state.

At the outset, we note that the abuse of discretion standard governs our review of a court's decision to permit a pretrial amendment to an information. *State v. Ramos*, 176 Conn. 275, 276, 407 A.2d 952 (1978); *State v. Caracoglia*, 78 Conn. App. 98, 101, 826 A.2d 192, cert. denied, 266 Conn. 903, 832 A.2d 65 (2003). Whether a trial court properly determined the scope of a remand presents a question of law, over which our review is plenary. *State* v. *Tabone*, 301 Conn. 708, 713–14, 23 A.3d 689 (2011). "Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . . These principles apply to criminal as well as to civil proceedings." (Citations omitted; internal quotation marks omitted.) Id., 714–15.

The resounding mandate that emanates from this court's decision in *Brundage I* is that the state could not proceed on any charges against the defendant that were time barred under General Statutes (Rev. to 1993) § 54-193a. The distinct issue presented to this court was whether the trial court "improperly . . . denied [the defendant's pretrial] motions to dismiss the sexual assault charges against him that were time barred by General Statutes (Rev. to 1993) § 54-193a . . . ."[3] *State* v. *Brundage*, supra, 138 Conn. App. 23. In interpreting that statute, this court agreed with the parties[4] that "§ 54-193a, as amended on May 23, 2002, does not apply retroactively and that any offenses that occurred prior to May 23, 2002, are time barred pursuant to General Statutes (Rev. to 1993) § 54-193a." Id., 29. We then applied that determination to the facts on hand, concluding in relevant part: "Of the four counts in the operative informations, only count one of the Wolcott information alleged a time period that is completely time barred. By alleging time periods up to October 18, 2002, the other three counts are partially untimely and partially timely. Because the trial court erroneously concluded that the current version of § 54-193a applied retroactively, it foreclosed the defendant from offering proof regarding the dates of the offenses in support of an affirmative statute of limitations defense. Such a defense simply no longer was viable in light of the court's ruling. Therefore, the court erred in denying the motions to dismiss." (Footnotes omitted.) Id., 32.

The remaining question concerned the proper remand. In his appellate brief, the defendant urged this

court "to set aside the judgment and dismiss the charge of sexual assault in the first degree, § 53a-70 (a) (2)." Although the state agreed with the defendant's claim that the trial court improperly applied the statute in question retroactively, it disagreed that a dismissal was warranted and instead contended that a remand for a new trial was appropriate. This court agreed with the state that a remand for a new trial, and not an outright dismissal, was the more appropriate order. Indeed, the decision in *Brundage I* expressly notes the aforementioned disagreement between the parties, stating: "Although the defendant acknowledges on appeal that prosecution of offenses that occurred after May 22, 2002, is not time barred, he argues that we should set aside the judgments of conviction and direct the trial court to dismiss the partially untimely charges, rather than remand the cases for a new trial. He fails, however, to provide any legal support for this request. Retrial here is not barred by the double jeopardy clause of the amendment. . . . In the absence of any persuasive reason to do otherwise, we conclude that the cases should be remanded for a new trial as to the charges that are not time barred." (Citation omitted; footnote omitted.) *State* v. *Brundage*, supra, 138 Conn. App. 32.

The state maintains that this court in *Brundage I* simply addressed the distinct question before it concerning retroactive application of § 54-193a, and thereby determined whether the trial court properly denied the defendant's motion to dismiss. We agree. "It is axiomatic that an appellate decision stands only for those issues presented to, and considered by, the court in that particular appeal." *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 582 n.10, 930 A.2d 739, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007). The issue of whether the state on remand was precluded from amending its information to add new charges was neither raised by the parties nor decided by this court. The only reference to the state's ability to amend comes in a footnote appended to the concluding sentence of part I of the opinion, in which this court noted that "[t]he defendant also conceded at trial that the state would have the opportunity to amend the informations if the court accepted his argument that the current version of § 54-193a is not retroactive." *State* v. *Brundage*, supra, 138 Conn. App. 32–33 n.13.

Viewed in context of the analysis set forth in *Brundage I*, we cannot say that the order remanding the matter "with direction to dismiss count one of the Wolcott information and for a new trial as to the remaining charges"; id., 39–40; precluded the state from filing a pretrial amendment to the information on remand. The decision merely returned the parties to the position that they would have been in had the trial court properly ruled on the defendant's motion to dismiss, hence the footnote in part I of that opinion on the defendant's

concession regarding the state's ability to amend the informations.

As our Supreme Court has observed, "[t]he state's attorneys, who are responsible for prosecuting violations of the criminal laws of this state, are executive branch officials. . . . There can be no doubt that [t]he doctrine of separation of powers requires judicial respect for the independence of the prosecutor. . . . Prosecutors, therefore, have a wide latitude and broad discretion in determining when, who, why and whether to prosecute for violations of the criminal law. . . . This broad discretion, which necessarily includes deciding which citizens should be prosecuted and for what charges they are to be held accountable . . . rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. . . . [J]udicial deference to the decisions of these executive officers . . . also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." (Citations omitted; internal quotation marks omitted.) *State* v. *Kinchen*, 243 Conn. 690, 699–700, 707 A.2d 1255 (1998). Indeed, a fundamental function of the state's attorney is "to determine [whether] there is reasonable ground to proceed with a criminal charge . . . ." *State* v. *Moynahan*, 164 Conn. 560, 568, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

It is well established that "[b]efore a trial begins, the state has broad authority to amend an information pursuant to Practice Book § 36-17."[5] (Internal quotation marks omitted.) *State* v. *Mullien*, 140 Conn. App. 299, 311, 58 A.3d 383 (2013). Because this court in *Brundage I* was not presented with, and did not decide, any claim that the state should be precluded from amending its information on remand, the trial court was not constrained in its ability to permit a pretrial amendment to the information. As the United States Court of Appeals for the Second Circuit explained, on remand "the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals. Of course, there is a corollary to this rule—if an issue *was not part of the appellate decision*, a trial court may consider the matter. . . . Put differently, [w]hen an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling *on that issue*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Burrell* v. *United States*, 467 F.3d 160, 165 (2d Cir. 2006); see also 5 Am. Jur. 2d 498, Appellate Review § 753 (2007) ("[o]n remand, a trial court is free to make any order or direction in further progress of [the] case . . . as to any question not settled by [the] decision [of the appellate court]").

Accordingly, the salient inquiry before the court in

considering the propriety of the substitute information was whether the state had proffered a sufficient factual basis on which to predicate the two counts of kidnapping in the first degree in violation of § 53a-92 (a) (2) (A) and (B) contained in the amended information. See *State* v. *Menzies*, 26 Conn. App. 674, 681, 603 A.2d 419 (discretionary power of state to select appropriate charge limited by facts prosecutor reasonably expected to prove at trial), cert. denied, 221 Conn. 924, 608 A.2d 690 (1992). To establish the defendant's guilt, the state must prove that he abducted the complainant and restrained her with the intent to "inflict physical injury upon [her] or violate or abuse [her] sexually; or . . . accomplish or advance the commission of a felony . . . ." General Statutes § 53a-92 (a) (2). The warrants for the defendant's arrest provide the requisite factual basis. The October 19, 2007 arrest warrant alleged in relevant part that the defendant "would pick [the complainant] up from school, and was suppose[d] to bring her right to her mother's business . . . however, he would instead take her to parking lots at abandoned buildings, force her to drink . . . white wine, and then force her to have sexual intercourse with him in his vehicle. . . ." Similarly, the November 20, 2007 arrest warrant alleged in relevant part that the defendant "would pick [the complainant] up after school, and was suppose[d] to take me to my mom's business . . . . On the way [the defendant] would pull into a vacant lot . . . . [The defendant] would climb over the seat and get on top of me. [He] would pull up my uniform skirt, and force my legs apart, and then he would put his penis inside my vagina, and have sex with me. I didn't want to have sex with [him], but I just laid there, and stared at the door until he got off me. Then he drove me to my mom's store. . . ."

In light of those factual allegations, the state was well within its broad discretion to charge the defendant with the aforementioned offenses. The mandate of *Brundage I* is that the state could not proceed on any charges against the defendant that were time barred under General Statutes (Rev. to 1993) § 54-193a. The charges contained in the November 26, 2012 substitute information are not time barred under that statute. Accordingly, we conclude that the court improperly dismissed that substitute information.

That determination, however, does not end our inquiry. The defendant also argues, as an alternate ground of affirmance, that the kidnapping in the first degree charges contained in the substitute information are barred by the doctrine of res judicata. We do not agree.

Res judicata is "a judicial doctrine"; *State* v. *Ellis*, 197 Conn. 436, 465, 497 A.2d 974 (1985); designed to inhibit the ability of "a plaintiff to litigate the same question over and over again, encumbering the mecha-

nisms our society has established to resolve disputes . . . ." (Internal quotation marks omitted.) *Sunbury* v. *Sunbury*, 216 Conn. 673, 677, 583 A.2d 636 (1990). At the same time, our Supreme Court has instructed that this doctrine of preclusion "should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 318, 460 A.2d 1277 (1983). For that reason, "the scope of matters precluded necessarily depends on what has occurred in the former adjudication." *State* v. *Ellis*, supra, 467.

"Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter [that] was offered to sustain the claim, but also as to any other admissible matter [that] might have been offered for that purpose. . . . Nonetheless, in applying the doctrine of res judicata to a [criminal] defendant's constitutional claim, special policy considerations must be taken into account. The interest in achieving finality in criminal proceedings must be balanced against the interest in assuring that no individual is deprived of his liberty in violation of his constitutional rights. . . . Whether two claims in a criminal case are the same for the purposes of res judicata should therefore be considered in a practical frame and viewed with an eye to all the circumstances of the proceedings. . . . Because the doctrine has dramatic consequences for the party against whom it is applied . . . we should be careful that the effect of the doctrine does not work an injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Long*, 301 Conn. 216, 236–37, 19 A.3d 1242, cert. denied,     U.S.    , 132 S. Ct. 827, 181 L. Ed. 2d 535 (2011). In ruling on the defendant's objection to the substitute information, the trial court in the present case concluded that the kidnapping charges were not barred by res judicata. Our review of that determination is plenary. *State* v. *McCarroll*, 113 Conn. App. 274, 277, 967 A.2d 323 (2009).

It is undisputed that the crimes of sexual assault in the first degree and risk of injury to a child differ from the crime of kidnapping in the first degree, in that they do not contain the same statutory elements. It also is undisputed that the kidnapping claims were not actually litigated in the original action. The defendant nevertheless contends that the state should be precluded from amending its information to include kidnapping claims.[6]

"The decision whether to apply res judicata to matters not actually litigated should be made in light of the policies underlying that doctrine—the competing interests of the defendant and of the courts in bringing litigation to a close and of the plaintiff in the vindication

of a just claim." (Internal quotation marks omitted.) *State* v. *Ellis*, supra, 197 Conn. 465. The underlying purposes of the doctrine "are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harrassed by vexatious litigation." Id., 465–66. Consideration of those purposes in light of the facts of this case persuades us that the defendant's claim is without merit.

First and foremost, because this court remanded the matter to the trial court for a new trial prior to the filing of the kidnapping charges, judicial resources would not be conserved by application of the preclusion doctrine. There likewise is no danger of inconsistent judgments resulting from the defendant's prosecution on kidnapping charges. As the Supreme Court noted, "[o]ur statute of limitations distinguishes between offenses according to their severity, and there is nothing inconsistent in the fact that some prosecutions are barred where others are not."[7] Id., 476. Finally, this is not a case in which the defendant has been harassed by vexatious litigation. Following his successful appeal in *Brundage I*, this court remanded the matter to the trial court, effectively placing the parties in the same position which they would have been in had the trial court properly ruled on the defendant's original motion to dismiss. Had the court done so, there is little doubt the state at that time would have been free to amend its informations to include the kidnapping charges the defendant now wishes to preclude.

In his appellate brief, the defendant alleges that "[t]he state is seeking to retry the defendant on the kidnapping charges only because the defendant successfully exercised his constitutional and statutory rights to contest the validity of the original prosecution." That bald assertion is not accompanied by analysis or reference to any evidence indicative of such animus. As the state persuasively has argued in this appeal, its decision not to pursue the kidnapping charges at the defendant's first trial "very well may have been influenced by the state of flux that existed in our kidnapping law in 2008 and 2009 . . . ." See *State* v. *Salamon*, 287 Conn. 509, 531, 949 A.2d 1092 (2008); see also *State* v. *DeJesus*, 288 Conn. 418, 426, 953 A.2d 45 (2008); *State* v. *Sanseverino*, 287 Conn. 608, 612, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, supra, 437, superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009). Absent any evidence to the contrary, we presume that the state did not harbor such animus toward the defendant, but rather acted to vindicate its legitimate interest in the prosecution of crime.

Our Supreme Court has observed that "[e]very prose-

cution is necessarily 'harrassing' and 'vexatious' from the standpoint of the defendant . . . . Principles of finality are offended only by that harassment which results from repetitious attempts to relitigate matters previously decided. Weighing against the minimal interests in finality presented by this case are strong social and legislative policies aimed at the effective administration of criminal justice." *State* v. *Ellis*, supra, 197 Conn. 477. That logic applies with equal force in the present case. We therefore conclude that the doctrine of res judicata does not bar the state from amending its information to include the kidnapping in the first degree charges.

The judgment is reversed and the case is remanded with direction to reinstate the November 26, 2012 substitute information and for further proceedings.

In this opinion the other judges concurred.

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

[2] The state's motion for articulation explained that, on remand before the trial court, "a question has arisen concerning the scope of [the Appellate] Court's rescript. The state has construed the rescript as permitting it to proceed on any charges which are not time barred. Because the trial court can only adjudicate rights and duties within the scope of the remand, the state respectfully submits that further clarification of the rescript in [*Brundage I*] is necessary to the proper litigation of the case on remand."

[3] *Brundage I* also addressed the defendant's claim that the court improperly permitted the state's expert witness to give an opinion in response to a hypothetical question. Noting that the issue "is likely to recur on retrial"; *State* v. *Brundage*, supra, 138 Conn. App. 33 n.14; we addressed the merits of that claim and determined that the court did not abuse its discretion. Id., 39. That analysis has little bearing on the issue presented in this appeal.

[4] On appeal, the state concurred with the defendant's claim that the trial court improperly determined that § 54-193a, as amended on May 23, 2002, applied retroactively, and thus improperly denied in part the defendant's motion to dismiss.

[5] Practice Book § 36-17 provides in relevant part: "If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. . . ."

[6] At oral argument before this court, counsel for the defendant conceded that the state is permitted to file a new information with a different docket number charging the defendant with the two counts of kidnapping in the first degree contained in the substitute information.

[7] To the contrary, the state submits that application of the doctrine of res judicata would create inconsistent judgments in that no statute of limitations exists for the crime of kidnapping, evincing the legislature's intent to have that crime prosecuted at any time.