******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MINH ANH HAN
(AC 43016)

Bright, C. J., and Alvord and Cradle, Js.

*Syllabus*

The defendant, who had been charged with the crime of sexual assault in the fourth degree and had been granted permission to participate in the statutory (§ 54-56e) pretrial diversionary program of accelerated rehabilitation, appealed to this court after the trial court terminated the order of accelerated rehabilitation. At a hearing on additional conditions proposed for the defendant's participation in the accelerated rehabilitation program, the court concluded that the circumstances of the case were too serious based, inter alia, on the defendant's participation in a fraternal organization and, sua sponte, terminated his participation in the accelerated rehabilitation program. *Held*:

1. Contrary to the state's claim, the trial court's ruling terminating the defendant's participation in the accelerated rehabilitation program was a final judgment for the purposes of appeal; consistent with the ordinary meaning of the plain language of the court, this court concluded that the ruling, in which the court stated it was going to terminate the defendant's participation in the accelerated rehabilitation program, constituted a termination of the defendant's participation in the program under § 54-56e and not a reconsideration and denial of the program.

2. The trial court abused its discretion in terminating the defendant's participation in the accelerated rehabilitation program: the defendant was not afforded notice that the court intended to terminate his participation in the program, the court did not allow the defendant to be heard on the issue of termination and the defendant did not have the opportunity to present evidence regarding successful compliance with the program; moreover, the court improperly based its decision to terminate the defendant's participation on extrajudicial information related to a fraternal organization in which the defendant participated, the defendant was not informed of the source of the information or given any opportunity to review or to rebut it, and the mere allegation of concerning activities of the fraternal organization without additional evidence was an insufficient basis to terminate the defendant's participation in the program.

Argued September 15—officially released December 1, 2020

*Procedural History*

Substitute information charging the defendant with the crime of sexual assault in the fourth degree, brought to the Superior Court in the judicial district of Hartford, geographical area number twelve, where the court, *McNamara, J.*, granted the defendant's application for accelerated rehabilitation; thereafter, the court, *McNamara, J.*, terminated the order of accelerated rehabilitation, and the defendant appealed to this court. *Reversed; further proceedings.*

*Trent A. LaLima*, with whom, on the brief, was *Hubert J. Santos*, for the appellant (defendant).

*Kathryn W. Bare*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *Adam Scott*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Minh Anh Han, appeals from the judgment of the trial court terminating[1] his participation in the accelerated rehabilitation program. On appeal, the defendant claims that the trial court abused its discretion by sua sponte terminating his participation in the program.[2] We conclude that the court abused its discretion in terminating the defendant's participation in the accelerated rehabilitation program. Accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On May 12, 2017, the defendant was arrested and charged with three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (7), and one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (5).[3] On May 15, 2018, the state filed a substitute information. The state withdrew the second degree sexual assault charges[4] and charged the defendant only with one count of sexual assault in the fourth degree. On that date, the defendant applied for admission to the accelerated rehabilitation program pursuant to General Statutes § 54-56e.[5]

On June 5, 2018, the trial court, *Oliver*, *J.*, denied the defendant's application for the accelerated rehabilitation program after concluding that the allegations against the defendant were too serious and that it could not find that the defendant would probably not offend again in the future. On November 29, 2018, the trial court, *McNamara*, *J.*, reconsidered the defendant's application for accelerated rehabilitation and granted it. The court imposed the maximum statutory period of supervision, two years, and the following conditions on the defendant: "[1] obey all state and federal laws . . . [2] comply with any other counseling and treatment deemed appropriate by [the Court Support Services Division, Office of Adult Probation (probation)] and continue with treatment . . . [3] have no contact with [the] victim . . . and [4] after a period of [accelerated rehabilitation and with] the approval of [probation] . . . may [travel] overseas for medical work."

By letter dated March 8, 2019, a probation officer, Amy Gile, sent a letter to the court, copying the state's attorney office and defense counsel, in which she asserted the following: Upon the defendant's admission to the program, probation referred the defendant for a sex offender evaluation. On January 28, 2019, he was "deemed appropriate" for sex offender treatment at The Connection, a center for the treatment of problem sexual behavior. The evaluator at The Connection assessed the defendant as a "moderate" risk for reoffending. On February 14, 2019, the defendant signed a treatment agreement with The Connection, which included, inter alia, a condition that he "not [act] in a

position of power over others."

Thereafter, the defendant disclosed to probation that he was a participant in the ManKind Project. Probation found that "the Man[K]ind Project is a global network of nonprofit organizations focused on modern male initiation, self-awareness, and personal growth." The defendant was participating in ManKind Project online groups and hosting meetings at his home, and he had submitted an "action plan" to probation requesting that he be allowed to attend out of state retreats with the ManKind Project, including one in New York. Probation contacted the leader of the New York retreat and learned that the defendant would attend the retreat as a "staff man" and that he potentially would be in a leadership position over other participants.

In her March 8, 2019 letter to the court, Officer Gile articulated a concern that the defendant's "self-disclosed participation in the ManKind Project place[s] him in a power . . . position over vulnerable members." Probation then requested that the court impose sixteen additional conditions as part of the defendant's accelerated rehabilitation program and require him to sign a computer access agreement "in order to effectively supervise the [defendant's] [accelerated rehabilitation] and properly enforce The Connection [t]reatment [a]greement."[6]

On March 26, 2019, over the defendant's objection, the court entered a bond condition of no contact with the ManKind Project but did not rule on probation's requested additional accelerated rehabilitation conditions. On May 3, 2019, the defendant filed a written objection to some, but not all, of the additional conditions proposed by probation in the March letter as "unnecessary, unreasonable, overly burdensome, and unrelated to the underlying alleged offense."[7] The defendant stated that he "[did] not object to [probation's] proposed condition requiring preapproval to attend ManKind Project retreats and barring him from attending as a staff member."

On May 15, 2019, defense counsel, a prosecutor, and Officer Gile appeared before the court, *McNamara, J.*, pursuant to probation's request for the additional conditions. At the hearing, the court stated that it would like to hear from Officer Gile as to why the conditions were necessary. The court asked Officer Gile: "And did you find out anything else about this ManKind Project? It was presented to me that this was a project where people—men would get together and they'd give—be given opportunities for growth, and for leadership, and to set them on the right path. Did you discover that this is, in fact, what it is?" Officer Gile responded: "Well, based on talking to [the leader of the New York ManKind Project retreat], he did say it was individuals that were trying to [achieve] self-growth, change their lives, better themselves."

The state concluded its argument by asking that the court impose the additional conditions requested by probation: "[T]he allegations . . . are serious, but, once again, not so serious that Your Honor couldn't find that [the defendant] shouldn't have a shot at having them dismissed. So . . . I'd ask that Your Honor impose the conditions so we can keep . . . a good eye on the defendant, and make sure he is somebody who will, in fact, have earned his dismissal in the end." Defense counsel rebutted by asking the court "to consider the conditions individually, rather than all of them being granted."

At the conclusion of the hearing, the court ruled as follows: "You know, the more I read about this case and the more I looked into the ManKind Project, I believe I was told certain things—I was led astray as to what the ManKind Project was. I did do research on the ManKind Project. . . . As I view [probation's] requirements, I realize that this [case] is by far too serious for accelerated rehabilitation. As you know the court granted accelerated rehabilitation with my discretion, and now I'm hearing that you don't like the conditions and you're going to object to certain conditions. Well, I can resolve that pretty easily. And I'm going to do that today. . . . I'm going to terminate his accelerated rehabilitation. [The defendant] does not want to follow the agreements, he does not want to follow the requirements. I feel this is a by far more serious case than I was led to believe. Especially the more I heard about the ManKind Project. . . . [T]he ManKind Project, as far as I know, may be a fraternal organization, but it also has some interesting idiosyncrasies, where parties go and they're subjected to more like a [boot camp like] atmosphere where parties are told not to wear any clothing when they're there. So I am going to terminate the accelerated rehabilitation, I'm going to place this back on [the] pretrial docket. What date would you like to come back and we can discuss this?"

In response to defense counsel's clarification that the defendant was "willing to abide by any condition" that the court may impose, the court stated: "It's too serious. After what I've learned about the ManKind Project and hearing [from probation] and reviewing [probation's] report . . . it's by far too serious for . . . accelerated rehabilitation. I made a mistake. I was led astray by certain facts which has bothered me since this program was granted. I thought it would be all right, but I'm more convinced now that it would not be the right thing to do with this case."[8] Accordingly, the court terminated the defendant's participation in the accelerated rehabilitation program and returned the case to the pretrial docket. This appeal followed.[9]

I

At the outset, we address the state's argument that

the trial court's ruling is not a final judgment for the purposes of appeal and, thus, this court lacks jurisdiction to consider it. The defendant characterizes the trial court's ruling as a "termination" of his participation in the accelerated rehabilitation program. The state contends that the trial court's ruling is not a termination, but a "reconsideration" of its decision granting the defendant's participation in the accelerated rehabilitation program and a "denial" of the application. As such, the state argues that the trial court's ruling is not a final judgment for the purposes of appeal, and, therefore, this court should dismiss the appeal for lack of jurisdiction. We agree with the defendant that the trial court's ruling constituted a termination of his participation in the accelerated rehabilitation program and, accordingly, that it is a final judgment for the purposes of appeal.

"Unless otherwise provided by law, the jurisdiction of our appellate courts is restricted to appeals from final judgments." *Krausman* v. *Liberty Mutual Ins. Co.*, 195 Conn. App. 682, 687, 227 A.3d 91 (2020); see also General Statutes §§ 51-197a and 52-263; Practice Book § 61-1. "An order of the court . . . terminating the participation of a defendant in [the accelerated rehabilitation] program [is] a final judgment for purposes of appeal." General Statutes § 54-56e (f). Conversely, an order of the court granting or denying a defendant's application for the accelerated rehabilitation program is not a final judgment for purposes of appeal. See *State* v. *Spendolini*, 189 Conn. 92, 96, 454 A.2d 720 (1983); *State* v. *Angelo*, 25 Conn. App. 235, 239, 594 A.2d 24, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991). Therefore, this court must determine whether the trial court's ruling is a termination of the defendant's participation in the accelerated rehabilitation program or a reconsideration and denial of the program.

"It is well established that the construction of a judgment presents a question of law over which we exercise plenary review." *Bauer* v. *Bauer*, 308 Conn. 124, 131, 60 A.3d 950 (2013). "To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Internal quotation marks omitted.) *Pasco Common Condominium Assn.*, *Inc.* v. *Benson*, 192 Conn. App. 479, 516, 218 A.3d 83 (2019). "In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Bauer* v. *Bauer*, supra, 131.

During the May 15, 2019 hearing, the court clearly expressed its intent when it twice stated that it was "going to terminate" the defendant's participation in the

accelerated rehabilitation program. The state maintains that "despite the court's use of the word 'terminate' when issuing its oral decision . . . [v]iewed in totality, the substance of the court's action . . . was a reconsideration and denial of its initial decision granting the program." The state's argument rests on the court's prefatory statements that it had been "led astray" and "made a mistake" in granting the defendant's application for the program. The state suggests that these statements imply the court's intent to reconsider and deny the defendant's application for the program, notwithstanding the court's express statement that it was going to terminate the defendant's participation in the program. We decline the state's invitation to disregard the plain and unambiguous language of the trial court. See 46 Am. Jur. 2d 474, Judgments § 66 (2017) ("[w]hen the language of the judgment is plain and unambiguous, there is no room for construction or interpretation").

"The language of a judgment must be given its ordinary meaning unless a technical or special meaning is clearly intended." *Brewer* v. *Gutierrez*, 42 Conn. App. 421, 424, 681 A.2d 345 (1996). Consistent with the ordinary meaning of the plain language of the trial court, we conclude that the court's ruling constituted a termination of the defendant's participation in the accelerated rehabilitation program under § 54-56e (f) and, accordingly, it is a final judgment for the purposes of appeal.

## II

The defendant claims on appeal that the trial court abused its discretion by terminating, sua sponte, his participation in the accelerated rehabilitation program. Specifically, the defendant argues that the court erred by (1) failing to provide notice that the court was contemplating termination, (2) failing to permit argument on termination, and (3) terminating the program despite the fact that there was an insufficient basis to conclude that the defendant violated the imposed conditions of the program. We agree with the defendant that the court's termination of the defendant's participation in the accelerated rehabilitation program was an abuse of its discretion.

"We review the court's rulings regarding a defendant's participation in the accelerated rehabilitation program for an abuse of discretion. . . . Our review of the trial court's exercise of its discretion is limited to the questions of whether the court correctly applied the law and whether it could reasonably conclude as it did. . . . It is only where an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . The trial court's findings of fact [underlying a termination] are entitled to great deference and will be

overturned only upon a showing that they were clearly erroneous." (Citation omitted; internal quotation marks omitted.) *State* v. *Jerzy G.*, 183 Conn. App. 757, 763, 193 A.3d 1215, cert. denied, 330 Conn. 932, 194 A.3d 1195 (2018).

"[Section] 54-56e establishes a discretionary pretrial diversionary program in certain criminal cases. It suspends criminal prosecution for a stated period of time subject to such conditions as the court shall order. If the defendant satisfactorily completes the probationary period he may then apply to the court for dismissal of the charges lodged against him. The main thrust of the statute is suspension of prosecution. . . . The only right that the defendant acquires by the granting of a motion for accelerated rehabilitation is the right to a dismissal of the underlying criminal charge if the defendant satisfactorily completes the period of pretrial probation imposed." (Internal quotation marks omitted.) *State* v. *Fanning*, 98 Conn. App. 111, 115, 908 A.2d 573 (2006), cert. denied, 281 Conn. 904, 916 A.2d 46 (2007). "If the defendant refuses to accept, or, having accepted, violates such conditions [as the court shall order], the defendant's case shall be brought to trial." General Statutes § 54-56e (d); see *State* v. *Trahan*, 45 Conn. App. 722, 732, 697 A.2d 1153 ("[i]f the trial court determines that the defendant did not fulfill the conditions of probation, the charges will not be dismissed and the defendant may be required to go to trial" (internal quotation marks omitted)), cert. denied, 243 Conn. 924, 701 A.2d 660 (1997).

In *State* v. *Jerzy G.*, supra, 183 Conn. App. 770, this court upheld the trial court's termination of a defendant's participation in an accelerated rehabilitation program when the court's decision "was a reasonable application of our law and did not result in injustice to the defendant." In that case, after the trial court granted the defendant's application for the program, United States Immigration and Customs Enforcement deported the defendant to Poland. Id., 761. Upon probation's request, the trial court advanced the date for a determination of whether the defendant had successfully completed the terms of his accelerated rehabilitation. Id. At that hearing, the state sought termination of the program. Id. Following additional hearings, the trial court found that the defendant, having been deported, was unable to comply with the imposed conditions of the program. Id., 769. The trial court indicated, however, that it would consider "tak[ing] remedial action and reinstat[ing] [the accelerated rehabilitation program] if somebody could show that [the defendant] was successful and he's back here and wants to complete the program, but, until that time, it remains terminated." (Internal quotation marks omitted.) Id. In support of this court's conclusion that, given the circumstances, the trial court's decision "was a reasonable application of our law and did not result in injustice to the defendant," we noted that "if the

defendant were to return to court, he presumably would have the opportunity to present evidence regarding successful completion." Id., 770 and n.5.

In *State* v. *Fanning*, supra, 98 Conn. App. 117, this court reversed the trial court's termination of a defendant's participation in an accelerated rehabilitation program because the only information provided to the court was that the defendant had been arrested. In that case, the defendant filed a motion to dismiss the charge underlying his admission into the accelerated rehabilitation program. Id., 113. At the hearing on that motion, the state made an oral motion to terminate the defendant's accelerated rehabilitation status, representing to the court that the defendant had been arrested during his participation in the program. Id. The trial court then indicated that it was terminating the defendant's accelerated rehabilitation status. Id., 115. On appeal, this court held that the mere fact of an arrest, without more, was an insufficient basis for the court to terminate the defendant's participation in the accelerated rehabilitation program. Id., 117; see also *State* v. *Buehler*, 110 Conn. App. 814, 816, 956 A.2d 602 (2008). In support of this court's conclusion that the trial court abused its discretion in terminating the program, we noted that although the defendant did not dispute his arrest, "the state filed no motion to terminate the defendant's accelerated rehabilitation status, but merely orally moved to do so at the hearing on the defendant's motion to dismiss the case. . . . Thus, on the facts in this case, it is not clear that the defendant had any notice that the state intended to oppose his motion to dismiss or would seek to terminate his pretrial probation." *State* v. *Fanning*, supra, 122 n.4.

In the present case, the state sought only to impose additional conditions requested by probation in order to keep "a good eye on the defendant, and make sure he is somebody who will, in fact, have earned his dismissal [of the charge] in the end."[10] At the hearing on the additional conditions, neither the state nor the defendant were aware that the trial court was contemplating termination of the defendant's participation in the program. The defendant was not afforded "notice that the state [or the trial court] intended to . . . terminate" his participation in the program. *State* v. *Fanning*, supra, 98 Conn. App. 122 n.4. When the court's intention became apparent, defense counsel twice attempted to interject his concerns to no avail. See footnote 8 of this opinion. The court did not offer the defendant the opportunity to be heard on the issue of termination, but, instead, repeated its request for counsels' availability to discuss the case once it was back on the pretrial docket for prosecution. Moreover, the defendant did not have an "opportunity to present evidence" regarding successful compliance with the program. *State* v. *Jerzy G.*, supra, 183 Conn. App. 770 n.5.[11]

Furthermore, the trial court expressly based its decision on concerns about the defendant's involvement with the ManKind Project. The only information in the record regarding the ManKind Project was probation's explanation of the goals of the organization, which aligned with how the organization had been presented to the court. When terminating the program, the court stated that "the ManKind Project, as far as I know, may be a fraternal organization, but it also has some interesting idiosyncrasies, where parties go and they're subjected to more like a [boot camp like] atmosphere where parties are told not to wear any clothing when they're there." There is nothing in the record to support this statement, which apparently came from an extrajudicial source.[12] The defendant was not informed of the source of this information or given any opportunity to review or rebut it. Even assuming, arguendo, that such information properly was considered by the court, the mere allegation of concerning associations, without more, is an insufficient basis for the court to terminate the defendant's participation in the accelerated rehabilitation program. See *State* v. *Fanning*, supra, 98 Conn. App. 117; see also *State* v. *Buehler*, supra, 110 Conn. App. 816.[13]

On the basis of the foregoing, we conclude that the trial court's termination of the defendant's participation in the accelerated rehabilitation program was an abuse of its discretion.

On remand, we provide the following guidance to the trial court. During the pendency of this appeal, the trial court's May 15, 2019 judgment terminating the defendant's participation in the accelerated rehabilitation program was stayed pursuant to our rules of practice. See Practice Book § 61-13. Consequently, on remand the parties are returned to the status that they assumed prior to the court issuing its judgment.[14] Specifically, under the terms of the defendant's accelerated rehabilitation program, the two year period of accelerated rehabilitation was to expire on November 29, 2020, however, the defendant's two year period of accelerated rehabilitation is considered tolled from the time of the trial court's ruling, May 15, 2019, until ten days following the release of this court's decision.[15] The conditions are those that existed as of the May 15, 2019 hearing. To the extent the state seeks to add conditions to the defendant's participation in the accelerated rehabilitation program and the defendant does not agree to the additional conditions, the parties may seek a further hearing before the court regarding whether additional conditions should be added.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The defendant characterizes the trial court's ruling as a "termination." The state disagrees with the defendant's characterization. For the reasons

set forth in part I of this opinion, we agree with the defendant that the trial court's ruling is a termination of his participation in the accelerated rehabilitation program. Accordingly, we refer throughout this opinion to the trial court's ruling as a termination.

[2] The defendant also claims that the trial court lacked statutory authority, under General Statutes § 54-56e, to terminate his participation in the accelerated rehabilitation program without finding that the defendant failed to comply with the imposed conditions of the program. The state contends that the defendant's statutory authority claim is unpreserved and, alternatively, meritless. Because we resolve this appeal on the basis that the court abused its discretion in terminating the defendant's participation in the accelerated rehabilitation program, we need not address the defendant's additional statutory authority claim. See *State* v. *Peeler*, 271 Conn. 338, 412 n.63, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

[3] General Statutes § 53a-71 (a) (7) provides: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . the actor accomplishes the sexual intercourse by means of false representation that the sexual intercourse is for a bona fide medical purpose by a health care professional . . . ." The charges against the defendant of sexual assault in the second degree in violation of § 53a-71 (a) (7) are class C felonies. See General Statutes § 53a-71 (b).

General Statutes § 53a-73a (a) (5) provides: "A person is guilty of sexual assault in the fourth degree when . . . such person subjects another person to sexual contact and accomplishes the sexual contact by means of false representation that the sexual contact is for a bona fide medical purpose by a health care professional . . . ." The charge against the defendant of sexual assault in the fourth degree in violation of § 53a-73a (a) (5) is a class A misdemeanor. See General Statutes § 53a-73a (b).

[4] An individual charged with sexual assault in the second degree in violation of § 53a-71 (a) (7) is ineligible for the pretrial accelerated rehabilitation program unless good cause is shown. See General Statutes § 54-56e (c) (1) (C).

[5] General Statutes § 54-56e provides in relevant part:

"(a) There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime or crimes . . . not of a serious nature. Upon application by any such person for participation in the program, the court shall, but only as to the public, order the court file sealed.

"(b) The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime or of a violation of section 14-196, subsection (c) of section 14-215, section 14-222a, subsection (a) or subdivision (1) of subsection (b) of section 14-224, section 14-227a or 14-227m or subdivision (1) or (2) of subsection (a) of section 14-227n, and (3) who states under oath, in open court or before any person designated by the clerk and duly authorized to administer oaths, under the penalties of perjury, (A) that the defendant has never had such program invoked on the defendant's behalf or that the defendant was charged with a misdemeanor or a motor vehicle violation for which a term of imprisonment of one year or less may be imposed and ten or more years have passed since the date that any charge or charges for which the program was invoked on the defendant's behalf were dismissed by the court . . . ."

On May 31, 2018, the Court Support Services Division, Office of Adult Probation determined that the defendant was eligible for the accelerated rehabilitation program because he had not used it previously.

[6] Probation requested that the court impose the following additional conditions to the defendant's accelerated rehabilitation program: (1) "You will participate in and complete any sex offender evaluation and recommended treatment as directed by a [p]robation [o]fficer. You may be financially responsible for all or part of the costs of such evaluation and treatment . . . ." (2) "You will participate in polygraph examinations administered by a [Court Support Services Division approved], specially trained polygraph examiner for treatment purposes and level of supervision . . . ." (3) "You will have no contact with victim(s), victim(s) family (including, but not limited to, by means of letter, telephone call, tape, video, [e-mail], text message or third party contact) unless approved by a [p]robation [o]fficer. Contact with the victim(s) or victim(s) family must be reported immediately to a [p]robation [o]fficer . . . ." (4) "You will notify the [p]robation [o]fficer of any new or existing romantic or sexual relationships . . . ." (5) "You will allow the [p]robation [o]fficer entry into your place of residence and

notify any occupant of your residence that a [p]robation [o]fficer may enter where you live . . . ." (6) "All employment must be [pre]approved by a [p]robation [o]fficer . . . ." (7) "You will provide financial and telephone records upon a [p]robation [o]fficer's request . . . ." (8) "You will abstain from the use of any alcoholic beverages and/or drugs unless prescribed by a physician [and] you will submit to random drug screens . . . ." (9) "You will not possess or subscribe to . . . any sexually explicit or sexually stimulating material deemed inappropriate by a [p]robation [o]fficer. You will not patronize any adult book store or adult video store, strip club or adult entertainment club or similar establishment . . . ." (10) "[You will] [s]ubmit to [a] search of your person, possession, vehicle or residence when the [p]robation [o]fficer has a reasonable suspicion to do so . . . ." (11) "You will not utilize telephone numbers which provide access to sexually oriented services . . . ." (12) "You will not hitchhike or pick up hitchhikers . . . ." (13) "You are not to associate with other known sex offenders and/or convicted felons except in an approved treatment program or with prior [p]robation [o]fficer approval . . . ." (14) "You are not allowed to leave the [s]tate of Connecticut without an approved [a]ction [p]lan . . . ." (15) "You will not utilize social, media sites, such as Facebook, Snapcha[t], Twitter, Instagram, LinkedIn or any dating websites . . . ." (16) "You will not participate with the ManKind Project in any manner without submitting an [a]ction [p]lan and approval from [probation]. If allowed to attend ManKind retreats, you will attend as a participant and not as a leader or 'staff man'."

In addition, probation requested that the defendant sign the following computer access agreement: (1) "I will not access any site that contains sexually explicit or sexually stimulating material and any other site that my [p]robation [o]fficer has instructed me not to access . . . ." (2) "I agree to have and voluntarily consent to having my computer examined and/or searched at any time, announced or unannounced, by [p]robation or its agent to verify compliance with the special condition of my probation," [and] (3) "[u]se of the internet via a [s]mart [p]hone will be reviewable by [probation] in conjunction with condition[s] [1] and [2] of the [c]omputer [a]ccess [a]greement."

[7] Specifically, the defendant objected to (1) "conditions regarding sex offenses, such as the requirement of sexual offender evaluation and treatment" because he had been undergoing treatment since approximately March, 2018, with William Hobson, a licensed counselor with experience treating sexual offenders, (2) the condition banning use of social media and dating websites, (3) the condition prohibiting alcohol consumption, (4) the condition restricting out of state travel, (5) the condition allowing home visits by probation, and (6) the condition involving polygraph examinations. The defendant also attached to his objection a letter from Hobson in which Hobson opined that other conditions requested by probation likewise were unnecessary.

[8] Defense counsel twice tried to interject during the court's ruling:

"The Court: Well, I can resolve that pretty easily. And I'm going to do that today.

"[Defense Counsel]: Your Honor—

"The Court: I'm going to terminate his accelerated rehabilitation. . . .

* * *

"The Court: I thought it would be all right, but I'm more convinced now that it would not be the right thing to do with this case.

"[Defense Counsel]: Your Honor—

"The Court: So we're going to place this back on the pretrial docket, tell me when you're available."

[9] Both parties have relied on the court's oral ruling of May 15, 2019. The record does not contain a signed transcript of the court's decision, as is required by Practice Book § 64-1 (a), and the defendant did not file a motion pursuant to § 64-1 (b) providing notice that the court had not filed a signed transcript of its oral decision. Furthermore, the defendant did not take any additional steps to obtain a decision in compliance with § 64-1 (a). As this court previously has stated, however: "In some cases in which the requirements of . . . § 64-1 (a) have not been followed, this court has declined to review the claims raised on appeal due to the lack of an adequate record. Despite the absence of a signed transcript of the court's oral decision or a written memorandum of decision, however, our ability to review the claims raised on the present appeal is not hampered because we are able to readily identify a sufficiently detailed and concise statement of the court's findings in the transcript of the proceeding." *State* v. *Esquilin*, 179 Conn. App. 461, 464 n.1, 179 A.3d 238 (2018). Accordingly, we will review the

defendant's claim.

[10] There is nothing in the record suggesting that the defendant was not complying with the conditions of his accelerated rehabilitation that were previously imposed by the court.

[11] Our appellate courts have not articulated whether due process requires a full evidentiary hearing before terminating a defendant's participation in the accelerated rehabilitation program. This court has noted that "due process does not, in every case require a full evidentiary hearing. What process is constitutionally due cannot be divorced from the nature of the ultimate decision that is being made. . . . Here, if the defendant's participation in the pretrial accelerated rehabilitation program is terminated, he will be entitled to the full panoply of rights due an accused criminal defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Fanning*, supra, 98 Conn. App. 122 n.5. On the facts of this case, we hold that, because the trial court failed to afford the defendant (1) notice that the court was contemplating termination, (2) the opportunity to be heard, and (3) the opportunity to present evidence, and the court improperly considered extrajudicial information, the trial court abused its discretion in terminating the defendant's participation in the accelerated rehabilitation program.

[12] "A judge serving as a fact finder shall not investigate facts in a matter independently and shall consider only the evidence presented and any facts that may properly be judicially noticed." Code of Judicial Conduct, Rule 2.9 (c). "The prohibition against a judge investigating the facts in a matter extends to information available in all mediums, including electronic." Code of Judicial Conduct, Rule 2.9, comment (6). This extrajudicial information was, therefore, not properly considered by the court.

[13] The state urges this court to affirm the judgment of the trial court on alternative grounds. The state argues that the information contained in probation's March 8, 2019 letter to the court supports the conclusion that the case is "too serious" for accelerated rehabilitation. This argument runs contrary to the state's representations of the case at the May 15, 2019 hearing: "[T]he allegations . . . are serious, but, once again, not so serious that Your Honor couldn't find that [the defendant] shouldn't have a shot at having them dismissed." Thus, we cannot determine that the court had a sufficient basis to terminate the defendant's participation in the accelerated rehabilitation program.

[14] See, e.g., *State* v. *Brundage*, 148 Conn. App. 550, 558, 87 A.3d 582 (2014) (partially reversing trial court's decision denying motion to dismiss "merely returned the parties to the position that they would have been in had the trial court properly ruled on the defendant's motion to dismiss"), aff'd, 320 Conn. 740, 135 A.3d 697 (2016); see also *State* v. *Buehler*, supra, 110 Conn. App. 815–16 (reversing trial court's termination of defendant's participation in accelerated rehabilitation program and remanding for further proceedings despite two year statutory period of accelerated rehabilitation set forth in § 54-56e (d) having expired).

[15] A reviewing court may order a statutory time period tolled when doing so is necessary to effectuate the purpose of the statute. See *State* v. *Garcia*, 235 Conn. 671, 675, 669 A.2d 573 (1996) (recognizing proposition and ordering time period for restoring competency under § 54-56d tolled during pendency of appeal because "reasonably necessary and appropriate" to facilitate judgment); see also *State* v. *Johnson*, 301 Conn. 630, 648, 26 A.3d 59 (2011) (recognizing that reviewing court has authority to toll statute of limitations during pendency of appeal in order to protect state's right to reinstitute charges). The purpose of the accelerated rehabilitation program is to ensure that the probationer receives a period of "genuine rehabilitation" assisted by the supervision of probation. (Internal quotation marks omitted.) *State* v. *Fanning*, supra, 98 Conn. App. 116; *State* v. *Jerzy G.*, supra, 183 Conn. App. 764.